JS 44 (Rev. 12/12)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Elizabeth Snider, individually and as Executrix of the Estate of Daniel A. Snider, et al. | Sterling Airways, Inc., et al. (See Attached List) |

**(b)** County of Residence of First Listed Plaintiff    Monongalia (West Virginia)
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Allegany (New York)
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
John R. Merinar, Jr., Esquire, Steptoe & Johnson PLLC, 400 White Oaks Blvd., Bridgeport, WV 26330, (304) 933-8135

Attorneys *(If Known)*
Patrick Hughes, Esquire, Connell Foley LLP, 85 Livingston Avenue, Roseland, NJ 07068, (973) 535-9217 (See Attached List)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 3   Federal Question *(U.S. Government Not a Party)*
- ☒ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plainti
*(For Diversity Cases Only)*   and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☒ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
Airplane Accident

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE   5/29/13

SIGNATURE OF ATTORNEY OF RECORD
/s/ Alan D. Mattioni

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## PARTIES

### Plaintiffs

ELIZABETH C. SNIDER, individually and as Executrix of the Estate of DANIEL A. SNIDER, and LEE W. SNIDER, a minor, by his mother, ELIZABETH C. SNIDER,

### Defendants

STERLING AIRWAYS, INC.

CONTINENTAL MOTORS, INC.

TDY INDUSTRIES, INC.

ALLEGHENY TECHNOLOGIES INCORPORATED

TELEDYNE TECHNOLOGIES INCORPORATED

TECHNIFY MOTORS (USA), INC.,

## ATTORNEYS

Howard Klein, Esquire
P. Connell McNulty, Esquire
Conrad O'Brien PC
1500 Market Street, Centre Square
West Tower, Suite 3900
Philadelphia, PA 19102
hklein@conradobrien.com
pmcnulty@conradobrien.com
*Attorneys for the Teledyne Defendants*

Walter P. DeForest, Esquire
Matthew S. McHale, Esquire
DeForest, Koscelnik, Yokitis, Skinner & Berardinelli
Koppers Building, 30th Floor
436 Seventh Avenue
Pittsburgh, PA 15219
deforest@deforestlawfirm.com
mchale@deforestlawfirm.com
*Attorneys for the Teledyne Defendants*

John R. Merinar, Jr., Esquire
Steptoe & Johnson PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
jack.merinar@steptoe-johnson.com
*Attorneys for Plaintiff Elizabeth C. Snider*

Patrick Hughes, Esquire
Connell Foley LLP
1500 Market Street
12th Floor, East Tower
Philadelphia, PA 19101
phughes@connellfoley.com
*Attorneys for Sterling Airways, Inc.*

**UNITED STATES DISTRICT COURT**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: Elizabeth Snider, 67 Days Run Road, Fairview, WV 26570

Address of Defendant: Sterling Airways, Inc., 1160 Airport Road, Hormel, NY 14843

Place of Accident, Incident or Transaction: Lock Haven, Pennsylvania
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))  Yes☐ No☐

Does this case involve multidistrict litigation possibilities?  Yes☐ No☒

RELATED CASE, IF ANY:
Case Number: 12-cv-4439; 12-cv-3490; __ Judge Hon. J. curtis Joyner __ Date Terminated: 01/22/2013; 01/14/2013; 01/14/2013
12-cv-3054

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐ No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☒ No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐ No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐ No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. Federal Question Cases:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
(Please specify) Federal Tort Claims Act

B. Diversity Jurisdiction Cases:
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) _____

**ARBITRATION CERTIFICATION**
(Check Appropriate Category)
I, _____, counsel of record do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: _____  _____  _____
Attorney-at-Law   Attorney I.D.#
NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 05/22/2013  /s/ Alan D. Mattioni  PA-64259
Attorney-at-Law   Attorney I.D.#

CIV. 609 (5/2012)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Elizabeth C. Snider, individually and as Executrix of the Estate of Daniel A. Snider, et al. | : | CIVIL ACTION |
| v. | : | |
| Sterling Airways, Inc., et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.                     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.                     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)                     ( x )

(f) Standard Management – Cases that do not fall into any one of the other tracks.               ( )


| 05/22/2013 | Alan D. Mattioni | United States of America |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (202) 616-4104 | (202) 616-4002 | Alan.Mattioni@usdoj.gov |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH C. SNIDER, individually and as Executrix of the Estate of DANIEL A. SNIDER, and LEE W. SNIDER, a minor, by his mother, ELIZABETH C. SNIDER, )))))) | |
| Plaintiff, )) | |
| v. )) | |
| STERLING AIRWAYS, INC., )) | |
| Defendant, )) | |
| and )) | |
| CONTINENTAL MOTORS, INC.; TDY INDUSTRIES, INC.; ALLEGHENY TECHNOLOGIES INCORPORATED; TELEDYNE TECHNOLOGIES INCORPORATED; and TECHNIFY MOTORS (USA), INC., ))))))) | Case No. _____ |
| Defendants and Third Party Plaintiffs, )) | |
| v. )) | |
| THE UNITED STATES OF AMERICA, LISE LEMELAND JESSUP, as Administratrix of the Estate of PATRICK C. JESSUP, PATRICIA PIERCE, and MEGAN LEWIS-WHITEMAN, as EXECUTRIX OF THE ESTATE OF RODNEY L. WHITEMAN, ))))))))) | |
| Third Party Defendants. )) | |

## NOTICE OF REMOVAL

1.      This action is being removed pursuant to 28 U.S.C. §§ 1442(a)(1), 2679(d)(2) and 1446.

2.      On June 21, 2010, a Cessna T210 airplane crashed near the William T. Piper Memorial Airport in Lock Haven, Pennsylvania, fatally injuring Daniel A. Snider and two others.

3.      On May 31, 2012, Plaintiffs Elizabeth C. Snider, individually and as Executrix of the Estate of Daniel A. Snider, and Lee W. Snider, a minor, by his mother Elizabeth Snider, filed suit against Sterling Airways, Inc., and Continental Motors, Inc., TDY Industries, Inc., Allegheny Technologies Incorporated, Teledyne Technologies Incorporated, and Technify Motors (USA), Inc. (collectively, "Teledyne Defendants") in the Court of Common Pleas for Philadelphia County, Pennsylvania.

4.      On May 10, 2013, the Teledyne Defendants filed a third-party complaint against Patricia Pierce and Megan Lewis-Whiteman, as Executrix of the Estate of Rodney L. Whiteman. (Ex. A, Third-Party Complaint.)

5.      The Third-Party Complaint alleges that Ms. Pierce and Mr. Whiteman had "responsibility for administration" of a contract between Sterling Airways, Inc. and the United States Department of Agriculture, Forest Service "on behalf of the United States of America." (Third-Party Complaint ¶ 20.)

6.      As set forth in the attached Certification, Ms. Pierce and Mr. Whiteman were acting within the scope of their employment with the United States Forest Service at

2

the time of the conduct alleged in the Third-Party Complaint. (Ex. B, Certification of

Scope of Employment.)

7.    28 U.S.C. § 2679(d)(2) states:

> Upon certification by the Attorney General that the defendant
> employee was acting within the scope of his office or employment at
> the time of the incident out of which the claim arose, any civil action
> or proceeding commenced upon such claim in a State court shall be
> removed without bond at any time before trial by the Attorney
> General to the district court of the United States for the district and
> division embracing the place in which the action or proceeding is
> pending. Such action or proceeding shall be deemed to be an action
> or proceeding brought against the United States under the provisions
> of this title and all references thereto, and the United States shall be
> substituted as the party defendant. This certification of the Attorney
> General shall conclusively establish scope of office or employment
> for purposes of removal.

8.    This action may, therefore, be removed to the District Court for the Eastern

District of Pennsylvania without bond pursuant to 28 U.S.C. §§ 1442(a)(1), 2679(d)(2)

and 1446.

Date: May **29**, 2013

                              Respectfully submitted,

                              STUART DELERY
                              Acting Assistant Attorney General

                              ZANE DAVID MEMEGER
                              United States Attorney

                              MARGARET L. HUTCHINSON
                              Assistant United States Attorney
                              Chief, Civil Division

                              VIVECA PARKER
                              Assistant United States Attorney

3

*/s/ Alan D. Mattioni*
ALAN D. MATTIONI
STEVEN A. KIRSCH
Trial Attorneys
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 14271
Washington, DC 20044-4271
Telephone: (202) 616-4104
Fax: (202) 616-4002
Alan.Mattioni@usdoj.gov

## CERTIFICATE OF SERVICE

I, Alan D. Mattioni, hereby certify that a true and correct copy of the foregoing

was served upon each of the following via U.S. Mail on May 29, 2013:

Howard Klein, Esquire
P. Connell McNulty, Esquire
Conrad O'Brien PC
1500 Market Street, Centre Square
West Tower, Suite 3900
Philadelphia, PA 19102
hklein@conradobrien.com
pmcnulty@conradobrien.com
*Attorneys for the Teledyne Defendants*

and

Walter P. DeForest, Esquire
Matthew S. McHale, Esquire
DeForest, Koscelnik, Yokitis, Skinner & Berardinelli
Koppers Building, 30th Floor
436 Seventh Avenue
Pittsburgh, PA 15219
deforest@deforestlawfirm.com
mchale@deforestlawfirm.com
*Attorneys for the Teledyne Defendants*

and

John R. Merinar, Jr., Esquire
Steptoe & Johnson PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
jack.merinar@steptoe-johnson.com
*Attorneys for Plaintiff Elizabeth C. Snider*

and

5

Patrick Hughes, Esquire
Connell Foley LLP
1500 Market Street
12th Floor, East Tower
Philadelphia, PA 19101
phughes@connellfoley.com
*Attorneys for Sterling Airways, Inc.*

*/s/ Alan D. Mattioni*
ALAN D. MATTIONI
Trial Attorney
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 14271
Washington, DC 20044-4271
Telephone: (202) 616-4104
Fax: (202) 616-4002
Alan.Mattioni@usdoj.gov

*Snider v. Sterling Airways, Inc., et al.*
*Notice of Removal*
*Exhibit "A" – Third-Party Complaint*

CONRAD O'BRIEN PC
By: Howard M. Klein (No. 33632)
    P. Connell McNulty (No. 87966)
1500 Market Street, Centre Square
West Tower, Suite 3900
Philadelphia, PA 19102
Phone – 215-864-9600/Fax – 215-864-9620
hklein@conradobrien.com
pmcnulty@conradobrien.com

DEFOREST KOSCELNIK YOKITIS
  SKINNER & BERARDINELLI
By: Walter P. DeForest (No. 05009)
    Matthew S. McHale (No. 91880)
    Will S. Skinner (Member of Cal. Bar)
Koppers Building, 30th Floor
436 Seventh Avenue
Pittsburgh, PA 15219
Telephone: 412-227-3101
deforest@deforestlawfirm.com
mchale@deforestlawfirm.com
skinner@deforestlawfirm.com

*Attorneys for Defendants and Third
Party Plaintiffs Continental Motors,
Inc., TDY Industries, LLC (improperly
named as TDY Industries, Inc. in this
action), Allegheny Technologies
Incorporated, Teledyne Technologies
Incorporated, and Technify Motor
(USA), Inc. (improperly named as
Technify Motors (USA), Inc. in this
action).*

| | |
|---|---|
| ELIZABETH C. SNIDER, Individually and as Executrix of the Estate of DANIEL A. SNIDER, and LEE W. SNIDER, a minor, by his mother, ELIZABETH C. SNIDER, <br><br>                 Plaintiffs, <br><br>         v. <br><br> STERLING AIRWAYS, INC., <br><br>                 Defendant, <br><br>       and <br><br> CONTINENTAL MOTORS, INC.; TDY INDUSTRIES, INC.; ALLEGHENY TECHNOLOGIES INCORPORATED; TELEDYNE TECHNOLOGIES INCORPORATED; and TECHNIFY MOTORS (USA), INC., <br><br>        Defendants and Third Party Plaintiffs, | COURT OF COMMON PLEAS PHILADELPHIA COUNTY <br><br> MAY TERM, 2012 <br><br> NO. 003753 |

v.                                          :
                                            :
THE UNITED STATES OF AMERICA,               :
LISE LEMELAND JESSUP, as                    :
Administratrix of the Estate of PATRICK C.  :
JESSUP, PATRICIA PIERCE, and MEGAN          :
LEWIS-WHITEMAN, as EXECUTRIX OF             :
THE ESTATE OF RODNEY L.                     :
WHITEMAN,                                   :
            Third Party Defendants.         :
                                            :

### DEFENDANTS' COMPLAINT
### AGAINST ADDITIONAL THIRD-PARTY DEFENDANTS PATRICIA PIERCE AND MEGAN LEWIS-WHITEMAN, AS EXECUTRIX OF THE ESTATE OF RODNEY L. WHITEMAN

Defendants Continental Motors, Inc., TDY Industries, LLC,[1] Allegheny Technologies Incorporated, Teledyne Technologies Incorporated, and Technify Motor (USA), Inc.,[2] (the "Joining Defendants"), by and through their undersigned counsel, file this Complaint joining Patricia Pierce and Megan Lewis-Whiteman, as Executrix of the Estate of Rodney L. Whiteman, as third-party defendants in addition to third-party defendants joined in the Complaint filed June 20, 2012, and in support thereof aver as follows:

1.      On May 31, 2012, plaintiffs Elizabeth C. Snider, individually and as Executrix of the Estate of Daniel A. Snider, and Lee W. Snider, a minor, by his mother, Elizabeth C. Snider, brought an action in the Philadelphia County Court of Common Pleas against, among others, Continental Motors, Inc. ("CMI"), Teledyne Technologies Incorporated ("TTI"), and Technify Motor (USA), Inc. ("TMI"), seeking, *inter alia*, damages, individually and on behalf of their decedent, Daniel A. Snider, arising out of an alleged June 21, 2010 accident involving a Cessna

---

[1] Plaintiffs improperly name TDY Industries, LLC as TDY Industries, Inc. in this action.
[2] Plaintiffs improperly name Technify Motor (USA), Inc. as Technify Motors (USA), Inc. in this action.

2

aircraft, Registration No. N30266 (the "Aircraft") on approach to the airport in Lock Haven, Pennsylvania. A copy of the Complaint is attached hereto as Exhibit 1.

  2.  On May 31, 2012, the action was removed to the United States District Court for the Eastern District of Pennsylvania by defendants CMI, TTI, and TMI. (ECF No. 1).

  3.  The Complaint alleges, *inter alia*, that Daniel A. Snider, at the time of his death, was an employee of the United States Department of Agriculture, Forest Service (Exhibit 1 ¶ 2), which had entered into Contract Number AG-3604-C-08-0002 (the "Contract") with defendant Sterling Airways, Inc. ("Sterling"), pursuant to which Contract Sterling provided the United States Department of Agriculture, Forest Service with the Aircraft and pilot, Patrick Jessup, which were involved in the accident in which Mr. Snider sustained fatal injuries. A copy of the Contract is attached hereto at Exhibit 2.

  4.  Plaintiffs further allege that pursuant to the Contract, Sterling promised to maintain and operate the Aircraft in accord with the requirements of Part 135 of the Federal Aviation Regulations ("FARs") (Exhibit 1 ¶ 12). Upon information and belief, the United States Department of Agriculture, Forest Service had chartered the Aircraft since March 28, 2008, and had a duty to assure that proper maintenance was performed upon the Aircraft at its home base at the Sterling facility in Hornell, New York.

  5.  The Contract was entered on March 28, 2008. The United States Department of Agriculture, Forest Service could renew the Contract for four one year periods. (Exh. 2 at ¶ B.1).

  6.  The Contract requires Sterling to "provide appropriate and Forest Service certified and approved aircraft and pilot as described in Section C [of the Contract] in order for the Government to conduct aerial surveys." (Exh. 2 at ¶ B.1).

3

7.     The Contract requires that the aircraft provided by Sterling "comply with all FAR Part 135 requirements," and it requires that the Regional Aviation Maintenance Program Manager inspect the aircraft before the Contract is operational. (Exh. 2 at ¶ C.1).

8.     The Contract requires the United States Department of Agriculture, Forest Service to approve an inspection system for the services provided under the Contract. (Exh. 2 at ¶ E.1).

9.     Before each flight, the Contract requires the United States Department of Agriculture, Forest Service, through its designated employee(s), and the contractor, Sterling, to have a safety plan in place. (Exh. 2 at ¶ C.9).

10.     If the contractor, Sterling, fails to meet Contract standards, the Contract allows the United States to take corrective action, including assuming responsibility for performance or termination of the Contract. (Exh. 2 at ¶ E.1).

11.     The Complaint asserts, *inter alia,* claims against Sterling stating that it "was negligent, grossly negligent, and/or reckless in failing to maintain Aircraft N30266 in reasonably safe condition, by failing to maintain N30266 in accord with the requirements of Part 135 of the FAR's," and that such failures to maintain and inspect resulted in Plaintiffs' injuries. (Exh. 1 ¶¶ 28-30).

12.     Plaintiffs also assert claims against the Joining Defendants sounding in strict liability and other theories contending that the Aircraft's engine was defective.

13.     Patricia Pierce was an officer, employee, or agent of the United States Department of Agriculture, Forest Service at all times relevant to Plaintiffs' Complaint and this Third Party Complaint.

14.     Rodney L. Whiteman was an officer, employee, or agent of the United States Department of Agriculture, Forest Service at all times relevant to Plaintiffs' Complaint and this Third Party Complaint.

4

15. Third Party Defendant Megan Lewis-Whiteman is, upon information and belief, the Executrix of the Estate of Rodney L. Whiteman, deceased, and she resides at 108 Open Ridge Road, Morgantown, West Virginia.

16. The Contract identifies Patricia Pierce as the Contracting Officer. (Exh. 2 at page 1A.)

17. Ms. Pierce designated Rodney Whiteman, a former United States Department of Agriculture, Forest Service officer, employee, or agent, the Contracting Officer's Technical Representative for the Contract, and authorized him to act on her behalf, with the exception of those matters reserved for the Contracting Officer. *See* Ex. 3, March 28, 2008, letter from Patricia Pierce to Rodney Whiteman, with attached form letter titled "Designation of Contracting Officer's Representative;" *see also* Ex. 4, March 28, 2008, letter from Patricia Pierce to James Caneen.

18. As the Contracting Officer's Technical Representative, Mr. Whiteman was "responsible for administering the performance of work under [the] [C]ontract." (Ex. 2 at ¶ G.2). With the exception of those matters reserved for the Contracting Officer, he was also responsible for "technical aspects of [the] [C]ontract." (Ex. 4).

19. As the Contracting Officer, Ms. Pierce had various responsibilities, including but not limited to giving written notice of any defects or non-conformance to the requirements of the Contract. (Ex. 2 at ¶ I.6). Additionally, Ms. Pierce was authorized to issue a Notice to Proceed, to terminate the Contract for default, and to enforce the Contract's warranty provisions. *See* Ex. 3 at "Designation of Contracting Officer's Representative" form.

20. Ms. Pierce, along with Mr. Whiteman and other presently unknown federal officers, employees, and agents, had ultimate responsibility for administration of the Contract, on

behalf of the United States of America, including oversight of the Contract's minimum requirements and inspection services.

21.     Upon information and belief, Sterling failed to inspect and maintain the Aircraft in a reasonably safe condition in accord with the requirements of Part 135 of the Federal Aviation Regulations.

22.     Ms. Pierce and Mr. Whiteman, severally or jointly, along with other presently unknown federal officers, employees, and agents, were negligent, grossly negligent, and reckless in that they knew or should have known by an inspection of the Sterling facility and its records and the Aircraft, all based in Hornell, New York, that Sterling lacked the qualifications and equipment to properly maintain the Aircraft in reasonably safe condition and that Sterling was not properly maintaining or providing for the maintenance of the Aircraft in reasonably safe condition at its home base in Hornell, New York.

23.     The decision of Ms. Pierce and Mr. Whiteman, severally or jointly, along with other presently unknown federal officers, employees, and agents, to charter the Aircraft was done negligently, grossly negligently, and recklessly without ensuring that Sterling was qualified to perform the chartering services, including the maintenance of the Aircraft, from the Aircraft's home base in Hornell, New York.

24.     Ms. Pierce and Mr. Whiteman, severally or jointly, along with other presently unknown federal officers, employees, and agents, knew or should have known that Sterling did not have in place appropriate or suitable maintenance practices which would allow the Aircraft to be operated in a reasonably safe manner from its home base in Hornell, New York, knew or should have known that Sterling was not properly maintaining or having maintained the Aircraft from its home base in Hornell, New York, and was negligent, grossly negligent, and reckless in

6

permitting use of the Aircraft for the business of the United States of America from the Aircraft's home base in Hornell, New York.

25.     Further, Ms. Pierce and Mr. Whiteman, severally or jointly, along with other presently unknown federal officers, employees, and agents, negligently, grossly negligently, and recklessly knew or should have known that Sterling did not have in place appropriate C.F.R. Title 14, Part 135 requirements, which would have allowed the Aircraft to be operated from its home base in Hornell, New York, in a safe manner; negligently, grossly negligently, and recklessly knew or should have known that Sterling was not maintaining the Aircraft at its home base in Hornell, New York, in accordance with C.F.R. Title 14, Part 135, and was negligent, grossly negligent, and reckless in permitting the Aircraft to be operated, including permitting it to depart from its home base in Hornell, New York on the trip when the accident occurred.

26.     Ms. Pierce and Mr. Whiteman, severally or jointly, along with other presently unknown federal officers, employees, and agents, negligently and grossly negligently failed to perform or negligently and grossly negligently performed their respective duties as Contracting Officer and Contracting Officer's Technical Representative. They, severally or jointly, along with other presently unknown federal officers, employees, and agents, negligently and grossly negligently failed to oversee or adequately oversee the inspection of the Aircraft at its home base in Hornell, New York and in so doing contributed to the negligent and grossly negligent maintenance of the Aircraft from its home base in Hornell, New York and the Plaintiffs' alleged injuries.

27.     The alleged negligent and grossly negligent misconduct did not involve  a discretionary function or duty on the part of a federal agency or federal employee, nor did it implicate a decision grounded in social, economic, and political policy.

7

28. Among other negligent and grossly negligent acts, Ms. Pierce and Mr. Whiteman, severally or jointly, along with other presently unknown federal officers, employees, and agents, failed to determine that the Aircraft was properly maintained, inspected, airworthy at all relevant times, and suitable for charter from its home base in Hornell, New York.

29. As the sole or contributory fault of Ms. Pierce and/or Mr. Whiteman, along with other presently unknown federal officers, employees, and agents, the Aircraft crashed.

30. Ms. Pierce, along with other presently unknown federal officers, employees, or agents, negligently, grossly negligently and completely failed to monitor Sterling's insurance coverage under the Contract, and therefore, on information and belief, Sterling only had $100,000 of coverage on the day of the accident when the Aircraft departed from its home base in Hornell, New York – far less insurance coverage than required under the Contract. Ms. Pierce, severally, or jointly along with other presently unknown federal agents, acted with reckless disregard and was negligent and grossly negligent in performing her oversight obligations.

31. Although Joining Defendants deny any liability to Plaintiffs, to the extent that they are found liable to Plaintiffs, they aver that Ms. Pierce and Megan Lewis-Whiteman, as Executrix of the Estate of Rodney L. Whiteman, are solely and/or jointly and/or severally liable for the injuries claimed by Plaintiffs in the aforementioned action, and as a result, they are liable over to the Joining Defendants for indemnity and/or contribution.

WHEREFORE, in the event that one or more of the Joining Defendants are found liable to Plaintiffs, which liability is denied, the Joining Defendants demand judgment in their favor and against Patricia Pierce and Megan Lewis-Whiteman, as Executrix of the Estate of Rodney L. Whiteman, on the basis that they, severally or jointly, are liable over to the Joining Defendants for indemnification and/or contribution.

A TRIAL BY JURY OF 12 IS DEMANDED ON ALL CLAMS SO TRIABLE.

8

*s/ Howard M. Klein*

Howard M. Klein
P. Connell McNulty
Conrad O'Brien PC
1500 Market Street, Centre Square
West Tower, Suite 3900
Philadelphia, PA 19102
Tel: 215.864.9600/Fax: 215.864.9620
hklein@conradobrien.com
pmcnulty@conradobrien.com

*Attorneys for Defendants and Third Party Plaintiffs*
*Continental Motors, Inc., TDY Industries, LLC*
*(improperly named as TDY Industries, Inc. in this*
*action), Allegheny Technologies Incorporated,*
*Teledyne Technologies Incorporated, and Technify*
*Motor (USA), Inc. (improperly named as Technify*
*Motors (USA), Inc. in this action)*

*Of Counsel:*

Walter P. DeForest
Matthew S. McHale
DEFOREST KOSCELNIK YOKITIS
 SKINNER & BERARDINELLI
3000 Koppers Building
Pittsburgh, PA 15219
Tel.:    (412) 227-3100
Email: deforest@deforestlawfirm.com
        mchale@deforestlawfirm.com

Will S. Skinner, Esquire
DEFOREST KOSCELNIK YOKITIS
 SKINNER & BERARDINELLI
21600 Oxnard Street, Suite 1760
Woodland Hills, CA 91367
Tel.:    (818) 710-7708
Email: skinner@deforestlawfirm.com

## VERIFICATION

I, G. Scott Rantovich, hereby certify that I am the Assistant Treasurer for Allegheny Technologies Incorporated and am authorized to execute this verification on behalf of Allegheny Technologies Incorporated. I hereby state that the facts set forth in the foregoing Defendants' Third-Party Complaint are true and correct to the best of my knowledge, information and belief.

I understand that this statement is made subject to the penalties of 18 Pa. Cons. Stat. Ann. § 4904, relating to unsworn falsification to authorities.

Date: _____5-8-13_____              _____

G. Scott Rantovich
Assistant Treasurer
Allegheny Technologies Incorporated

## VERIFICATION

I, G. Scott Rantovich, hereby certify that I am the Assistant Treasurer for TDY Industries, LLC and am authorized to execute this verification on behalf of TDY Industries, LLC. I hereby state that the facts set forth in the foregoing Defendants' Third-Party Complaint are true and correct to the best of my knowledge, information and belief.

I understand that this statement is made subject to the penalties of 18 Pa. Cons. Stat. Ann. § 4904, relating to unsworn falsification to authorities.

Date:  5-8-13

G. Scott Rantovich
Assistant Treasurer
TDY Industries, LLC

## VERIFICATION

I, Chris Rowe, hereby certify that I am the Controller for Continental Motors, Inc. and am authorized to execute this verification on behalf of Continental Motors, Inc. I hereby state that the facts set forth in the foregoing Defendants' Third-Party Complaint are true and correct to the best of my knowledge, information and belief.

I understand that this statement is made subject to the penalties of 18 Pa. Cons. Stat. Ann. § 4904, relating to unsworn falsification to authorities.

Date: ___5/9/13___          _____

Chris Rowe
Controller
Continental Motors, Inc.

## VERIFICATION

I, Tian Shan, hereby certify that I am the President and Chief Executive Officer of Technify Motor (USA), Inc. and am authorized to execute this verification on behalf of Technify Motor (USA), Inc. I hereby state that the facts set forth in the foregoing Defendants' Third-Party Complaint are true and correct to the best of my knowledge, information and belief.

I understand that this statement is made subject to the penalties of 18 Pa. Cons. Stat. Ann. § 4904, relating to unsworn falsification to authorities.

Date: April 9. 2013
(Actually May)

TIAN SHAN
President and Chief Executive Officer
Technify Motor (USA), Inc.

## VERIFICATION

I, Melanie S. Cibik, hereby certify that I am Senior Vice President, General Counsel and Secretary for Teledyne Technologies Incorporated and am authorized to execute this verification on behalf of Teledyne Technologies Incorporated. I hereby state that the facts set forth in the foregoing Defendants' Third-Party Complaint are true and correct to the best of my knowledge, information and belief.

I understand that this statement is made subject to the penalties of 18 Pa. Cons. Stat. Ann. § 4904, relating to unsworn falsification to authorities.

Date:  May 7, 2013

Melanie S. Cibik
Senior Vice President, General Counsel and Secretary
Teledyne Technologies Incorporated

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was filed with the Court on May 10, 2013, and caused to be served upon the following counsel via the Court's electronic filing system or via U.S. Mail on that date:

John R. Merinar, Jr., Esquire
Steptoe & Johnson PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
Jack.merinar@steptoe-johnson.com
*Attorney for Elizabeth C. Snider, Individually and as Executrix of the Estate of Daniel A. Snider, and Lee W. Snider, a minor, by his mother, Elizabeth C. Snider*

Jeffrey W. Moryan, Esquire
Laurie B. Kachonick, Esquire
Michael J. Crowley, Esquire
Patrick J. Hughes, Esquire
Michael J. Shortt, Esquire
Connell Foley LLP
85 Livingston Avenue
Roseland, NJ 07068
*Attorneys for Sterling Airways, Inc. and Lise Lemeland Jessup, as Administratrix of the Estate of Patrick C. Jessup*

Alan D. Mattioni, Esquire
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 14271
Washington, DC 20044-4271
*Attorney for the United States of America*

s/ *P. Connell McNulty*
P. Connell McNulty

# EXHIBIT 1



IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA

ELIZABETH C. SNIDER, Individually and
as Executrix of the Estate of DANIEL A.
SNIDER, and LEE W. SNIDER, a minor, by
his mother, ELIZABETH C. SNIDER,
                          Plaintiffs,

v.

STERLING AIRWAYS, INC.,
CONTINENTAL MOTORS, INC.,
TDY INDUSTRIES, INC., ALLEGHENY
TECHNOLOGIES INCORPORATED,
TELEDYNE TECHNOLOGIES
INCORPORATED, and TECHNIFY
MOTORS (USA), INC.,
                          Defendants.

CIVIL DIVISION

G.D. NO. _____

**COMPLAINT IN CIVIL ACTION**

CODE NO. _____

FILED ON BEHALF OF PLAINTIFFS
ELIZABETH C. SNIDER, Individually and
as Executrix of the Estate of DANIEL A.
SNIDER, and LEE W. SNIDER, a minor,
by his mother, ELIZABETH C. SNIDER.

Counsel of Record for Plaintiffs:

John R. Merinar, Jr.
Pennsylvania I.D. No. 204675

STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
304-933-8135
304-933-8183 (fax)
jack.merinar@steptoe-johnson.com

**JURY TRIAL DEMANDED**

6019820

Case ID: 120503753

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA

ELIZABETH C. SNIDER, Individually and
as Executrix of the Estate of DANIEL A.
SNIDER, and LEE W. SNIDER, a minor,
by his mother, ELIZABETH C. SNIDER,
                    Plaintiffs,

v.

STERLING AIRWAYS, INC.,
CONTINENTAL MOTORS, INC.,
TDY INDUSTRIES, INC., ALLEGHENY
TECHNOLOGIES INCORPORATED,
TELEDYNE TECHNOLOGIES
INCORPORATED, and TECHNIFY
MOTORS (USA), INC.,
                    Defendants.

CIVIL DIVISION

G.D. NO. _____

**COMPLAINT IN CIVIL ACTION**

CODE NO. _____

## NOTICE TO DEFEND

TO THE ABOVE DEFENDANT(S):

      You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally, or by attorney, and by filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any claim or relief requested by the plaintiffs. You may lose money or property or other rights important to you.

      **YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

      **IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AS A REDUCED FEE OR NO FEE.**

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-6333

Case ID: 120503753

## AVISO

        Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decider a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

**LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO. VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.**

ASSOCIACION DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E
Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-6333

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA

| | |
|---|---|
| ELIZABETH C. SNIDER, Individually and as Executrix of the Estate of DANIEL A. SNIDER, and LEE W. SNIDER, a minor, by his mother, ELIZABETH C. SNIDER, <br> Plaintiffs, | CIVIL DIVISION <br><br> G.D. NO. _____ |
| v. | **COMPLAINT IN CIVIL ACTION** |
| STERLING AIRWAYS, INC., CONTINENTAL MOTORS, INC., TDY INDUSTRIES, INC., ALLEGHENY TECHNOLOGIES INCORPORATED, TELEDYNE TECHNOLOGIES INCORPORATED, and TECHNIFY MOTORS (USA), INC., <br> Defendants. | CODE NO. _____ |

## COMPLAINT

Come now the Plaintiffs, Elizabeth C. Snider, Individually and as Executrix of the Estate of Daniel A. Snider, and Lee W. Snider, a minor, by his mother, Elizabeth C. Snider and state as follows:

### I.  THE PARTIES

1.      This is an action for wrongful death and survival arising out of the June 21, 2010 crash of Aircraft N30266 just short of Runway 9 at William T. Piper Memorial Airport in Lock Haven, Pennsylvania.  Daniel A. Snider died in the post-crash fire.

2.      At the time of his death, Daniel A. Snider was a resident of Monongalia County, West Virginia and an employee of the United States Department of Agriculture, Forest Service ("Forest Service").

5987324

Case ID: 120503753

3.     Elizabeth C. Snider was married to Daniel A. Snider at the time of his death. She is the mother of Lee W. Snider and the Executrix of Daniel A. Snider's estate. At all times relevant to this matter, Elizabeth C. Snider has been a resident of Monongalia County, West Virginia.

4.     Lee W. Snider is the son of Daniel A. Snider. At all times relevant to this matter, he has been a resident of Monongalia County, West Virginia.

5.     Charles Snider and Sharon Snider are the parents of Daniel A. Snider. They have elected not to participate as plaintiffs in this civil action. They reside at 245 Days Run Road, Fairview, West Virginia 26570, and can be reached at (304) 879-5102.

6.     Defendant Sterling Airways, Inc. ("Sterling") is a New York corporation with its principal place of business at 1160 Airport Road, Hormel, New York 14843.

7.     Defendant Continental Motors, Inc. ("Continental") (formerly known as Teledyne Continental Motors, Inc.) is a Delaware corporation with its principal place of business at 2039 Broad Street, Mobile, Alabama 36615, and a registered agent at c/o National Corporate Research, Ltd., 600 North 2nd Street, Suite 500, Harrisburg, PA 17101.

8.     Defendant TDY Industries, Inc. ("TDY") (formerly known as Teledyne Industries, Inc.) is a California corporation with its principal place of business at 1000 Six PPG Place, Pittsburgh, Pennsylvania 15222.

9.     Defendant Allegheny Technologies Incorporated, ("Allegheny") (formerly Allegheny Teledyne Incorporated) is a Delaware corporation with its principal place of business at 1000 Six PPG Place, Pittsburgh, Pennsylvania 15222.

10.     Defendant Teledyne Technologies Incorporated ("TTI") is a Delaware corporation with its principal place of business at 1049 Camino Dos Rios, Thousand Oaks,

Case ID: 120503753

California 91360, and a registered agent at c/o National Corporate Research, Ltd., 600 North 2nd
Street, Suite 500, Harrisburg, PA 17101.

       11.    Defendant Technify Motors (USA), Inc. ("Technify") is an Alabama
corporation with its principal place of business at 2039 Broad Street, Mobile, Alabama 36615.

## II. JURISDICTION AND VENUE

       12.    Sterling is the registered owner of, and at the time of the accident which is
the subject of this lawsuit was the operator of, a model T-210L airplane manufactured by Cessna
Aircraft Company and having identification number N30266 ("Aircraft N30266"). In 2007,
Sterling entered into contract number AG-3604-C-08-0002 ("the Contract") with the Forest
Service. Pursuant to the Contract, Sterling provided the Forest Service with Aircraft N30266 and
a pilot, Patrick Jessup, for the purpose of conducting aerial deforestation surveys over several
states, including the Commonwealth of Pennsylvania. Sterling promised to maintain and operate
the aircraft in accord with the requirements of Part 135 of the Federal Aviation Regulations
("FAR's") and to obtain Aircraft Public and Passenger Liability Insurance coverage in the
amount of not less than $200,000.00 per person. The contract term was for a one-year period,
after which the Contract automatically renewed for additional one-year periods. The Contract
was in a one-year renewal period when Aircraft N30266 crashed on June 21, 2010, resulting in
the deaths of passenger and Forest Service employee Daniel A. Snider, fellow passenger and
Forest Service employee Rodney L. Whiteman, and pilot and Sterling employee Patrick Jessup.

       13.    Pursuant to the Contract, Aircraft N30266, while piloted by Jessup, made
frequent stops at airports in Pennsylvania and routinely conducted aerial survey operations in
Pennsylvania airspace. On the date of the accident, Aircraft N30266, piloted by Jessup, departed
from the Hornell, New York airport and flew to the airport at Clarion, Pennsylvania to pick up
passengers Snider and Whiteman. The aircraft, its pilot, and its passengers then performed aerial

survey operations over Pennsylvania before approaching the airport in Lock Haven, Pennsylvania with the intent to land there. The engine suffered a catastrophic in-flight failure, and the aircraft crashed just short of Runway 9 at the Lock Haven airport. Daniel A. Snider survived the impact, but died in the post-crash fire.

14.     The Contract was issued by the Forest Service Northern Research Station located in Newton Square, Pennsylvania. The Contracting Officer was Forest Service employee Patricia Pierce, who was employed at the Northern Research Station located in Newton Square, Pennsylvania.

15.     On the date of the accident, Aircraft N30266 was equipped with a model TSIO-520-H engine (serial number 198870-73H). The TSIO-520-H model engine was certified by the Federal Aviation Administration by revising Type Certificate E8CE on October 22, 1968. Teledyne Continental Motors is shown on the type certificate as the current certificate holder for the model TSIO-520-H engine. TCM did not yet exist as a corporate entity in 1968 when the model TSIO-520-H engine was certified. At that time, the manufacturer and certificate holder was Continental Aircraft Engine Co., a subsidiary of Continental Motor Company. Through mergers in 1969, Continental Aircraft Engine Co. became an unincorporated division of Defendant TDY (at the time known as Teledyne Industries, Inc.). Following the 1969 mergers, this unincorporated division of defendant TDY began doing business under the name of Teledyne Continental Motors.

16.     The TSIO-520-H engine, serial number 198870-73H, was installed in Aircraft N30266 in 1973, at which time TCM was an unincorporated division of defendant TDY.

17.     TDY was, in turn, a wholly-owned subsidiary of defendant Allegheny (at the time known as Allegheny Teledyne Incorporated). Allegheny and TDY did not function as

truly separate corporate entities. Allegheny is the alter ego of TDY, and during the period from 1969 until 1999, was involved in an ongoing joint venture with TDY to manufacture, maintain the certification of, promote, market, sell, provide product support, and service aircraft engines and parts thereof, including the model TSIO-520-H engines and engine parts. Furthermore, TDY and Allegheny are successors and real parties in interest with regard to liabilities incurred by the Continental Aircraft Engine Co. and its parent, Continental Motor Company, with regard to manufacture and certification of model TSIO-520-H engines.

18.    In 1999, defendant TTI purchased all assets and liabilities of the unincorporated division known as TCM-Piston Engines from defendant Allegheny.    This transaction has been described by TDY, Allegheny, and TTI as a "spin off" pursuant to which TTI assumed all responsibility for liability for piston engine production by TCM while it was part of TDY.    In fact, TTI became involved in a joint venture with TDY and Allegheny to manufacture, maintain the certification of, market, sell, and provide product support for aircraft engines and parts thereof, including model TSIO-520-H engines and engine parts.

19.    In 2001, the unincorporated division of TTI known as Teledyne Continental Motors was incorporated under the name, Teledyne Continental Motors, Inc. Along with TTI, TDY, and Allegheny, Teledyne Continental Motors, Inc. engaged in a joint venture to manufacture, maintain the certification of, market, sell, and provide product support for aircraft engines and parts thereof, including model TSIO-520-H engines and engine parts.

20.    In 2011, Teledyne Continental Motors, Inc. changed its name to Continental Motors, Inc.    Shortly thereafter, Continental Motors, Inc. was sold to Technify Motors (USA), Inc.    Technify is a successor and real party in interest with regard to liabilities incurred by Continental Motors, Inc., formerly known as Teledyne Continental Motors, Inc.

21.     TDY, Allegheny, Continental, TTI, and Technify      ("the Teledyne defendants"), and the TCM operational division which they controlled, are or have been the designers, manufacturers, assemblers, marketers, promoters, sellers, certifiers, and product support suppliers with regard to model TSIO-520-H engines.   Upon information and belief, the Pennsylvania Teledyne defendants (TDY and Allegheny) failed to function and legally act as independent companies and failed to independently and adequately capitalize their business functions.  By way of example, when Allegheny owned TDY, and TCM was an unincorporated division of TDY, Allegheny reported TCM's revenue as its own.   Allegheny and TDY comingled the majority of corporate officers, and Allegheny advertised TCM as its own operating division without reference to TDY.   As a result of the aforementioned failures to observe corporate formalities, the corporate veils of the Pennsylvania Teledyne defendants should be pierced.

22.     The 1999 "spin off" of TCM from Allegheny was done for the purpose of shielding Allegheny from liability for known defects in TCM engines, including model TSIO-520-H engines.

23.     The Teledyne defendants and their unincorporated division applied for certification, performed certification testing, designed, and certified the TSIO-520-H engine as safe and airworthy.  These defendants became aware of manufacturing defects with the hydraulic valve lifter assemblies, connecting rod assemblies, connecting rod bolts and nuts, cylinder assemblies, exhaust valves, exhaust valve guides, crankshafts, bearings, and pistons of the TSIO-520-H engine, yet they continued to represent to regulatory authorities and the public that the TSIO-520-H engine was suitable and reliable.  For example, they failed to disclose that:

6019820

Case ID: 120503753

a.      The process used for seating exhaust valve guides resulted in distortions of the exhaust valve guides, causing their inner surfaces to be misshapen, which in turn resulted in higher stresses and wear rates on exhaust valves.

b.      The exhaust valves were not the correct size for the exhaust valve guides. Clearances between exhaust valves and exhaust valve guides were beyond tolerance limits at the time the Teledyne defendants assembled the cylinders. As a consequence, exhaust valves were subjected to extraordinary stresses and prone to fracture.

c.      The exhaust valves were not forged of the correct alloy, making them more brittle and susceptible to fracture.

d.      The undersized exhaust valves permitted the escape of exhaust gasses at an unsafe rate, resulting in "coking" on the valves, which in turn prevented the valve guides, valves, and valve seats from operating properly; thus, subjecting the valves to heat and mechanical stresses that made them prone to failure.

e.      The exhaust valves and exhaust valve guides were not aligned properly.

f.      The pistons were not forged of the correct alloy, making them more brittle and susceptible to fracture when impacting valves which, due to the defects described in subparagraphs (a)-(e) above, were not seated properly.

24.     The Teledyne defendants, and/or the TCM operating division which they controlled, manufactured, maintained the certification of, promoted, and sold engine parts, some or all of which were in defective and unreasonably dangerous condition, including, but not limited to, hydraulic valve lifter assemblies, connecting rod assemblies, connecting rod bolts and nuts, cylinder assemblies, exhaust valves, exhaust valve guides, crankshafts, bearings, and

Case ID: 120503753

pistons which were installed in Aircraft N30266 during the period between 2004 and the date of the accident.

25.     The Teledyne defendants, and/or the TCM operating division which they controlled, also provided service and maintenance guidance, training and other support regarding the TSIO-520-H and other engines and parts that they manufactured.  Through their "TCM Link FBO Services" program, the Teledyne defendants have entered into and maintain contractual relationships with Pennsylvania "Fixed Base Operators" ("FBO's"), which are companies engaged in the business of aircraft operations, support, and maintenance.  Through their TCM Link FBO Services Program, the Teledyne defendants provide Pennsylvania FBO's with maintenance/service training, service manuals, promotional materials, and other written information and guidance.  Pennsylvania FBO's maintaining memberships in the Teledyne defendants' TCM Link FBO Services Program are authorized to hold themselves out to the public as authorized Continental service/repair facilities.  Through the member FBO's, the Teledyne defendants promoted the sale of TCM engines and engine parts in Pennsylvania.

26.     Venue is proper in this Court under the provisions of Pa. R. Civ. P. 2179 in that one or more of the defendant corporations have their principal places of business in Allegheny County, Pennsylvania.

27.     This Court has jurisdiction over the defendants under the provisions of 42 Pa. Cons. Stat. § 5322(a)(1) in that all of them have conducted business within Pennsylvania.

### III.  WRONGFUL DEATH AND SURVIVAL ACTION

#### A.     *STERLING*

28.     Defendant Sterling was negligent, grossly negligent, and/or reckless in failing to maintain Aircraft N30266 in reasonably safe condition, by failing to maintain aircraft N30266 in accord with the requirements of part 135 of the FAR's, and by failing to comply with

issuance and compliance requirements for an Air Carrier Certificate as set forth in Part 119 of the FAR's. By way of example, Sterling failed to calibrate instruments used to check compression during annual inspections and failed to use a bore scope to inspect cylinders and their component parts. Sterling's negligent failure to adequately inspect and maintain Aircraft N30266 was a proximate cause of the wrongful death of Daniel A. Snider. Sterling breached the Contract with the Forest Service by failing to maintain Aircraft N30266 in accord with the requirements of Parts 119 and 135 of the FAR's, and by procuring Aircraft Public and Passenger Liability Insurance coverage in the amount of $100,000.00 per person instead of in the contractually-required amount of not less than $200,000.00 per person. Plaintiffs are third-party beneficiaries of the portions of the Contract which Sterling breached.

29.     As a result of Sterling's negligence, gross negligence, recklessness, and breach of contract, Elizabeth Snider and Lee Snider have suffered anguish and emotional distress, loss of consortium, funeral expenses, the costs of administering Daniel A. Snider's Estate, and the loss of household services provided by Daniel A. Snider. Elizabeth Snider and Lee Snider are entitled to recover damages, pursuant to 42 Pa. Cons. Stat. § 8301, from Sterling for their anguish and emotional distress, loss of consortium, funeral expenses, the costs of administering Daniel A. Snider's Estate and the loss of household services provided by Daniel A. Snider.

30.     As a result of Sterling's negligence, gross negligence, recklessness, and breach of contract, Daniel A. Snider experienced tremendous pain and suffering, emotional distress, and loss of future income and earning capacity. Pursuant to 42 Pa. Cons. Stat. § 8302 and 20 Pa. Cons. Stat. § 3373, the Estate of Daniel A. Snider is entitled to recover damages from

Sterling for Daniel A. Snider's lost future income and earning capacity, pain and suffering experienced, emotional distress, and punitive damages.

### B.    TDY AND ALLEGHENY

31.    Defendants TDY and Allegheny engaged in a joint venture from 1969 to 1999 to manufacture, maintain the certification of, promote, market, sell, provide product support for, and service aircraft engines and parts thereof, including model TSIO-520-H engines. Upon information and belief, these defendants manufactured, promoted, marketed, and sold engine parts, including, but not limited to, hydraulic valve lifter assemblies, connecting rod assemblies, connecting rod bolts and nuts, cylinder assemblies, exhaust valves, exhaust valve guides, crankshafts, bearings, and pistons which were then installed on aircraft N30266's TSIO-520-H engine, serial number 198870-73H, between 2004 and the date of the accident. TDY and Allegheny warranted that engine, serial number 198870-73H, and the parts manufactured by them and installed in aircraft N30266 between 2004 and the date of the accident, were free of material defects, fit for use, and safe for use in aircraft. TDY and Allegheny breached this warranty because some or all of the aforementioned engine parts were manufactured, promoted, marketed and sold by these defendants in defective and unreasonably unsafe condition, as set forth in paragraph 26 and its subparagraphs, incorporated herein by reference. These defective parts failed in flight, causing the death of Daniel A. Snider. Defendants TDY and Allegheny are strictly liable for the damages caused by the failure of these engine parts. Defendants TDY and Allegheny are also guilty of negligence, gross negligence, and recklessness because, during the period of their joint venture described above, they became aware of problems with the manufacturing process for the TSIO 520 series of engines and parts thereof, including but not limited to those problems described in paragraph 26 and its subparagraphs. TDY and Allegheny

Case ID: 120503753

nevertheless continued to represent to regulatory authorities and to the public that the TSIO-520-H engines and parts thereof were suitable and reliable. Upon information and belief, some or all of the TCM parts (hydraulic valve lifter assemblies, connecting rod bolts and nuts, cylinder assemblies, exhaust valves, exhaust valve guides, crankshafts, bearings and pistons), which were installed on the TSIO-520-H engine serial number 198870-73H between 2004 and the date of the accident, were manufactured, promoted, marketed, and sold at a time when TDY and Allegheny were aware that manufacturing process problems were causing such parts to be defective and in unreasonably unsafe condition.

32.     As a result of TDY's and Allegheny's breach of warranty, strict liability, negligence, gross negligence, and recklessness, Elizabeth Snider and Lee Snider have suffered anguish and emotional distress, loss of consortium, funeral expenses, the costs of administering Daniel A. Snider's Estate, and the loss of household services provided by Daniel A. Snider. Elizabeth Snider and Lee Snider are entitled to recover damages pursuant to 42 Pa. Cons. Stat. § 8301 from TDY and Allegheny for their anguish and emotional distress, loss of consortium, funeral expenses, the costs of administering Daniel A. Snider's Estate, and the loss of household services provided by Daniel A. Snider.

33.     As a result of TDY's and Allegheny's negligence, gross negligence, recklessness, strict liability, and breach of warranty, Daniel A. Snider experienced tremendous pain and suffering, emotional distress, and loss of future income and earning capacity. Pursuant to 42 Pa. Cons. Stat. § 8302 and 20 Pa. Cons. Stat. § 3373, the Estate of Daniel A. Snider is entitled to recover damages from TDY and Allegheny for Daniel A. Snider's lost future income and earning capacity, pain and suffering, emotional distress, and punitive damages.

## C.     *TTI*

34.    Defendant TTI is a real party and successor in interest to defendants TDY and Allegheny. Upon information and belief, TTI engaged in a joint venture with defendants TDY and Allegheny during the period from 1999 through 2001 to manufacture, maintain the certification of, promote, market, sell, provide product support for, and service aircraft engines and parts thereof, including model TSIO-520-H engines. Upon information and belief, through this joint venture, TTI manufactured, promoted, marketed, and sold engine parts, including, but not limited to, hydraulic valve lifter assemblies, connecting rod assemblies, connecting rod bolts and nuts, cylinder assemblies, exhaust valves, exhaust valve guides, crankshafts, bearings, and pistons which were installed on the aircraft N30266's TSIO-520-H, engine serial number 198870-73H, between 2004 and the date of the accident. Through this joint venture, TTI warranted that engine serial number 198870-73H, and the parts thereof manufactured by it or its predecessors in interest, and installed in aircraft N30266's TSIO-520-H engine between 2004 and the date of the accident, were free of material defects, fit for use, and safe for use in aircraft. TTI breached this warranty because some or all of the aforementioned engine parts were manufactured, promoted, marketed and sold by these defendants in defective and unreasonably unsafe condition, as set forth in paragraph 26 and its subparagraphs, incorporated herein by reference.    These defective parts failed in flight, causing the death of Daniel A. Snider. Defendant TTI is strictly liable for the damages caused by the failure of these engine parts. TTI is also guilty of negligence, gross negligence, and recklessness because TTI and its predecessors in interest, TDY and Allegheny, became aware of problems with the manufacturing process for the TSIO 520 series of engines and parts thereof, including but not limited to those problems described in paragraph 26 and its subparagraphs. TTI and its predecessors in interest, TDY and Allegheny, nevertheless continued to represent to regulatory authorities and to the public that the

TSIO-520-H engines and parts thereof were suitable and reliable. TTI adopted and perpetuated this pattern of misrepresentation. Upon information and belief, some or all of the TCM parts (hydraulic valve lifter assemblies, connecting rod assemblies, connecting rod bolts and nuts, cylinder assemblies, exhaust valves, exhaust valve guides, crankshafts, bearings, and pistons), which were installed on aircraft N30266's TSIO-520-H engine serial number 198870-73H between 2004 and the date of the accident, were manufactured, promoted, marketed, and sold at a time when TDY and Allegheny were aware that manufacturing process problems were causing such parts to be defective and unreasonably unsafe in condition, and TTI became aware of this upon assuming responsibility for the unincorporated division known as TCM.

35. As a result of TTI's breach of warranty, strict liability, negligence, gross negligence, and recklessness, Elizabeth Snider and Lee Snider have suffered anguish and emotional distress, loss of consortium, funeral expenses, the costs of administering Daniel A. Snider's Estate, and the loss of household services provided by Daniel A. Snider. Elizabeth Snider and Lee Snider are entitled to recover damages Pursuant to 42 Pa. Cons. Stat. § 8301 from TTI for their anguish and emotional distress, loss of consortium, funeral expenses, the costs of administering Daniel A. Snider's Estate, and the loss of household services provided by Daniel A. Snider.

36. As a result of TTI's negligence, gross negligence, recklessness, strict liability, and breach of warranty, Daniel A. Snider experienced tremendous pain and suffering, emotional distress, and loss of future income and earning capacity. Pursuant to 42 Pa. Cons. Stat. § 8302 and 20 Pa. Cons. Stat. § 3373, the Estate of Daniel A. Snider is entitled to recover damages from TTI for Daniel A. Snider's lost future income and earning capacity, pain and suffering, emotional distress, and punitive damages.

#### D.    *CONTINENTAL*

37.    Defendant Continental Motors, Inc. is a real party and successor in interest to defendants TDY, Allegheny, and TTI. Upon information and belief, Continental engaged in a joint venture with defendants TDY, Allegheny, and TTI during the period from 2001 through 2011 to manufacture, maintain the certification of, promote, market, sell, provide product support for, and service aircraft engines and parts thereof, including model TSIO-520-H engines. Upon information and belief, through this joint venture, Continental manufactured, promoted, marketed, and sold engine parts, including, but not limited to, hydraulic valve lifter assemblies, connecting rod assemblies, connecting rod bolts and nuts, cylinder assemblies, exhaust valves, exhaust valve guides, crankshafts, bearings, and pistons which were installed on aircraft N30266's TSIO-520-H, engine serial number 198870-73H, between 2004 and the date of the accident. Through this joint venture, Continental warranted that engine serial number 198870-73H, and the parts thereof manufactured by it or its predecessors in interest, and installed in aircraft N30266's TSIO-520-H engine between 2004 and the date of the accident, were free of material defects, fit for use, and safe for use in aircraft. Continental breached this warranty because some or all of the aforementioned engine parts were manufactured, promoted, marketed and sold by these defendants in defective and unreasonably unsafe condition, as set forth in paragraph 26 and its subparagraphs, incorporated herein by reference. These defective parts failed in flight, causing the death of Daniel A. Snider. Defendant Continental is strictly liable for the damages caused by the failure of these engine parts. Continental is also guilty of negligence, gross negligence, and recklessness because Continental and its predecessors in interest, TDY, Allegheny, and TTI became aware of problems with the manufacturing process for the TSIO 520 series of engines and parts thereof, including but not limited to those problems described in paragraph 26 and its subparagraphs. Continental and its predecessors in interest, TDY,

Case ID: 120503753

Allegheny, and TTI, nevertheless continued to represent to regulatory authorities and to the public that the TSIO-520-H engines and parts thereof were suitable and reliable. Continental adopted and perpetuated this pattern of misrepresentation. Upon information and belief, some or all of the TCM parts (hydraulic valve lifter assemblies, connecting rod assemblies, connecting rod bolts and nuts, cylinder assemblies, exhaust valves, exhaust valve guides, crankshafts, bearings, and pistons), which were installed on the TSIO-520-H, engine serial number 198870-73H, between 2004 and the date of the accident, were manufactured, promoted, marketed, and sold at a time when TDY, Allegheny, and TTI were aware that manufacturing process problems were causing such parts to be defective and unreasonably unsafe in condition, and Continental became aware of this upon its formation as a corporation in 2001.

38.     As a result of Continental's breach of warranty, strict liability, negligence, gross negligence, and recklessness, Elizabeth Snider and Lee Snider have suffered anguish and emotional distress, loss of consortium, funeral expenses, the costs of administering Daniel A. Snider's Estate, and the loss of household services provided by Daniel A. Snider. Elizabeth Snider and Lee Snider are entitled to recover damages Pursuant to 42 Pa. Cons. Stat. § 8301 from Continental for their anguish and emotional distress, loss of consortium, funeral expenses, the costs of administering Daniel A. Snider's Estate and the loss of household services provided by Daniel A. Snider.

39.     As a result of Continental's negligence, gross negligence, recklessness, strict liability, and breach of warranty, Daniel A. Snider experienced tremendous pain and suffering, emotional distress, and loss of future income and earning capacity. Pursuant to 42 Pa. Cons. Stat. § 8302 and 20 Pa. Cons. Stat. § 3373, the Estate of Daniel A. Snider is entitled to

recover damages from TTI for Daniel A. Snider's lost future income and earning capacity, pain and suffering, emotional distress, and punitive damages.

### E. *TECHNIFY*

40.     Defendant Technify Motors (USA), Inc. is a real party and successor in interest to defendants TDY, Allegheny, TTI, and Continental. ("Technify's predecessors") Upon information and belief, Technify's predecessors engaged in a joint venture during the period from 1969 through 2011 to manufacture, maintain the certification of, promote, market, sell, provide product support for, and service aircraft engines and parts thereof, including model TSIO-520-H engines.   Upon information and belief, through this joint venture, Technify's predecessors manufactured, promoted, marketed, and sold engine parts, including, but not limited to, hydraulic valve lifter assemblies, connecting rod assemblies, connecting rod bolts and nuts, cylinder assemblies, exhaust valves, exhaust valve guides, crankshafts, bearings, and pistons, which were installed on aircraft N30266's TSIO-520-H, engine serial number 198870-73H, between 2004 and the date of the accident.   Through this joint venture, Technify's predecessors warranted that engine serial number 198870-73H, and the parts thereof manufactured by them and installed in aircraft N30266's TSIO-520-H engine between 2004 and the date of the accident, were free of material defects, fit for use, and safe for use in aircraft. Technify's predecessors breached this warranty because some or all of the aforementioned engine parts were manufactured, promoted, marketed and sold by these defendants in defective and unreasonably unsafe condition, as set forth in paragraph 26 and its subparagraphs, incorporated herein by reference.   These defective parts failed in flight, causing the death of Daniel A. Snider.  Technify and its predecessors are strictly liable for the damages caused by the failure of these engine parts.   Techify's predecessors are also guilty of negligence, gross negligence, and recklessness because Technify and its predecessors became aware of problems

with the manufacturing process for the TSIO 520 series of engines and parts thereof, including but not limited to those problems described in paragraph 26 and its subparagraphs. Technify's predecessors nevertheless continued to represent to regulatory authorities and to the public that TSIO-520-H engines and parts thereof were suitable and reliable. Upon information and belief, some or all of the TCM parts (hydraulic valve lifter assemblies, connecting rod assemblies, connecting rod bolts and nuts, cylinder assemblies, exhaust valves, exhaust valve guides, crankshafts, bearings, and pistons), which were installed in aircraft N30266's TSIO-520-H engine, serial number 198870-73H, between 2004 and the date of the accident, were manufactured, promoted, marketed, and sold at a time when Technify's predecessors were aware that manufacturing process problems were causing such parts to be defective and unreasonably unsafe in condition.

41.     As a result of the breach of warranty, strict liability, negligence, gross negligence, and recklessness of Technify's predecessors, Elizabeth Snider and Lee Snider have suffered anguish and emotional distress, loss of consortium, funeral expenses, the costs of administering Daniel A. Snider's Estate, and the loss of household services provided by Daniel A. Snider. Elizabeth Snider and Lee Snider are entitled to recover damages Pursuant to 42 Pa. Cons. Stat. § 8301 from Technify for their anguish and emotional distress, loss of consortium, funeral expenses, the costs of administering Daniel A. Snider's Estate, and the loss of household services provided by Daniel A. Snider.

42.     As a result of the negligence, gross negligence, recklessness, strict liability, and breach of warranty by Technify's predecessors, Daniel A. Snider experienced tremendous pain and suffering, emotional distress, and loss of future income and earning capacity. Pursuant to 42 Pa. Cons. Stat. § 8302 and 20 Pa. Cons. Stat. § 3373, the Estate of

Daniel A. Snider is entitled to recover damages from Technify for Daniel A. Snider's lost future income and earning capacity, pain and suffering experienced by Daniel A. Snider, emotional distress experienced by Daniel A. Snider, and punitive damages.

WHEREFORE, Plaintiffs respectfully request that they be awarded the damages prayed for in the preceding paragraphs. Plaintiffs request a trial by jury.

Respectfully submitted,

/s/ John R. Merinar, Jr.
John R. Merinar, Jr.                    (PA ID# 204675)

STEPTOE & JOHNSON PLLC        400 White Oaks Boulevard
        Of Counsel                      Bridgeport, WV 26330-4500
                                        (304) 933-8135

*Attorney for Plaintiffs Elizabeth C. Snider, Individually and as Executrix of the Estate of Daniel A. Snider, and Lee W. Snider, a minor, by his Mother, Elizabeth C. Snider*

6019820

# EXHIBIT 2

| ORDER FOR SUPPLIES OR SERVICES | | | | PAGE | OF PAGES |
|---|---|---|---|---|---|
| | | | | 1 | 26 |

**IMPORTANT: Mark all packages and papers with contract and/or order numbers.**

| 1. DATE OF ORDER | 2. CONTRACT NO. *(if any)* | 6. SHIP TO: | | |
|---|---|---|---|---|
| 04/08/2008 | AG-3604-C-08-0002 | a. NAME OF CONSIGNEE | | |
| 3. ORDER NO. | 4. REQUISITION/REFERENCE NO. | USDA FOREST SERVICE | | |
| AG-3604-D-08-0008 | 149106 | | | |

5. ISSUING OFFICE *(Address correspondence to)*
USDA FOREST SERVICE
NORTHERN RESEARCH STATION
11 CAMPUS BLVD SUITE 220
NEWTOWN SQUARE PA 19073-4100

b. STREET ADDRESS
NORTHERN RESEARCH STATION
180 CANFIELD STREET

| c. CITY | d. STATE | e. ZIP CODE |
|---|---|---|
| MORGANTOWN | WV | 26505-3101 |

7. TO:

a. NAME OF CONTRACTOR
STERLING AIRWAYS INC

f. SHIP VIA

b. COMPANY NAME

8. TYPE OF ORDER

□ a. PURCHASE    REFERENCE YOUR:

☒ b. DELIVERY

c. STREET ADDRESS
1100 AIRPORT RD    JAMES CANEEN
161019694 A

Please furnish the following on the terms and conditions specified on both sides of this order and on the attached sheet, if any, including delivery as indicated.

Except for billing instructions on the reverse, this delivery order is subject to instructions contained on this side only of this form and is issued subject to the terms and conditions of the above-numbered contract.

| d. CITY | e. STATE | f. ZIP CODE |
|---|---|---|
| HORNELL | NY | 14843 |

9. ACCOUNTING AND APPROPRIATION DATA
BOC 2541 2423SPFH5308

10. REQUISITIONING OFFICE
USDA FOREST SERVICE

11. BUSINESS CLASSIFICATION *(Check appropriate box(es))*

☒ a. SMALL    □ b. OTHER THAN SMALL    □ c. DISADVANTAGED    □ g. SERVICE-DISABLED VETERAN-OWNED

□ d. WOMEN-OWNED    □ e. HUBZone    □ f. EMERGING SMALL BUSINESS

| 12. F.O.B. POINT |
|---|
| origin- |

| 13. PLACE OF | 14. GOVERNMENT B/L NO. | 15. DELIVER TO F.O.B. POINT ON OR BEFORE *(Date)* | 16. DISCOUNT TERMS |
|---|---|---|---|
| a. INSPECTION | b. ACCEPTANCE | 04/30/2009 | NET/30 |
| Destination | Destination | | |

17. SCHEDULE *(See reverse for Rejections)*

| ITEM NO. (a) | SUPPLIES OR SERVICES (b) | QUANTITY ORDERED (c) | UNIT (d) | UNIT PRICE (e) | AMOUNT (f) | QUANTITY ACCEPTED (g) |
|---|---|---|---|---|---|---|
| | Contract Services for Aircraft and Pilot for Government Aerial Surveying | | | | | |
| | Continued ... | | | | | |

| 18. SHIPPING POINT | 19. GROSS SHIPPING WEIGHT | 20. INVOICE NO. | | 17(h) TOTAL *(Cont. pages)* |
|---|---|---|---|---|

| | 21. MAIL INVOICE TO: | | | |
|---|---|---|---|---|
| SEE BILLING INSTRUCTIONS ON REVERSE | a. NAME | USDA FOREST SERVICE | $25,500.00 | |
| | b. STREET ADDRESS (or P.O. Box) | NORTHERN RESEARCH STATION 11 CAMPUS BLVD SUITE 220 | | 17(i) GRAND TOTAL |
| | c. CITY | d. STATE | e. ZIP CODE | $25,500.00 |
| | NEWTOWN SQUARE | PA | 19073-4100 | |

| 22. UNITED STATES OF AMERICA BY *(Signature)* | 23. NAME *(Typed)* |
|---|---|
| ▶ *Patricia Pierce* | PATRICIA PIERCE |
| | TITLE: CONTRACTING/ORDERING OFFICER |

AUTHORIZED FOR LOCAL REPRODUCTION
PREVIOUS EDITION NOT USABLE

Vendor

OPTIONAL FORM 347 (Rev. 3/2005)
Prescribed by GSA/FAR 48 CFR 53.213(e)

| ORDER FOR SUPPLIES OR SERVICES | | | | | | PAGE OF PAGES | |
|---|---|---|---|---|---|---|---|
| SCHEDULE - CONTINUATION | | | | | | 2 | 26 |

IMPORTANT: Mark all packages and papers with contract and/or order numbers.

| DATE OF ORDER | CONTRACT NO. | | | | ORDER NO. | | |
|---|---|---|---|---|---|---|---|
| 04/08/2008 | AG-3604-C-08-0002 | | | | AG-3604-D-08-0008 | | |

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY ORDERED (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) | QUANTITY ACCEPTED (G) |
|---|---|---|---|---|---|---|
| | Admin Office:<br>  USDA FOREST SERVICE<br>  NORTHERN RESEARCH STATION<br>  11 CAMPUS BLVD SUITE 220<br>  NEWTOWN SQUARE PA 19073-4100<br>Period of Performance: 03/28/2008 to<br>03/27/2009 | | | | | |
| 001 | Task Order 01 is for Base Year Services<br>(March, 2008 - March, 2009). Estimating 40<br>hours @ $425 = $25,500<br><br>0101 Hourly Rate for providing airplane and<br>pilot @ $425.00<br>0102 Ferry Time and hourly rate to<br>Morgantown, WV airport (1.4 hrs @ $425)<br>0103 Ferry Time and hourly rate to Elkins,<br>WV Airport (1.7 hrs @ $425)<br>0104 Ferry Time and hourly rate to<br>Frederick, MD Airport (1.3 hrs @ $425)<br>0105 Ferry Time and hourly rate to Clarion,<br>PA Airport (.8 hrs @ $425)<br><br>In accordance with attached contract<br>AG-3604-C-08-0002<br>Product/Service Code:  R499<br>Product/Service Description: OTHER<br>PROFESSIONAL SERVICES<br><br><br>The total amount of award: $25,500.00. The<br>obligation for this award is shown in box<br>17(i). | 25500 | DO | 1.00 | 25,500.00 | |

TOTAL CARRIED FORWARD TO 1ST PAGE (ITEM 17(H))

| AWARD/CONTRACT | 1. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 350) | RATING | | PAGE OF PAGES 1 26 |
|---|---|---|---|---|

| 2. CONTRACT (Proc. Inst. Ident.) NO. AG-3604-C-08-0002 | | 3. EFFECTIVE DATE See Block 20C | 4. REQUISITION/PURCHASE REQUEST/PROJECT NO. 149106 |
|---|---|---|---|

| 5. ISSUED BY | CODE | 3604 | 6. ADMINISTERED BY (If other than Item 5) | CODE | 3604 |
|---|---|---|---|---|---|

USDA FOREST SERVICE
NORTHERN RESEARCH STATION
11 CAMPUS BLVD SUITE 220
NEWTOWN SQUARE PA 19073-4100

USDA FOREST SERVICE
NORTHERN RESEARCH STATION
11 CAMPUS BLVD SUITE 220
NEWTOWN SQUARE PA 19073-4100

7. NAME AND ADDRESS OF CONTRACTOR

STERLING AIRWAYS INC
1100 AIRPORT RD   JAMES CANEEN
161019694 A
HORNELL NY 14843

8. DELIVERY
[ ] FOB ORIGIN   [X] OTHER (See below)
9. DISCOUNT FOR PROMPT PAYMENT
NET/30

10. SUBMIT INVOICES (4 copies unless otherwise specified) TO THE ADDRESS SHOWN IN — ITEM 7

CODE 161019694   FACILITY CODE

11. SHIP TO/MARK FOR   CODE

USDA FOREST SERVICE
NEASTERN AREA STATEPRIVATE FOREST
180 CANFIELD STREET
MORGANTOWN, PA 26505-3101

12. PAYMENT WILL BE MADE BY   CODE 3604

USDA FOREST SERVICE
NORTHERN RESEARCH STATION
11 CAMPUS BLVD SUITE 220
NEWTOWN SQUARE PA 19073-4100

13. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION:
[ ] 10 U.S.C. 2304 (c) (   )   [ ] 41 U.S.C. 253 (c) (   )

14. ACCOUNTING AND APPROPRIATION DATA

| 15A. ITEM NO. | 15B. SUPPLIES/SERVICES | 15C. QUANTITY | 15D. UNIT | 15E. UNIT PRICE | 15F. AMOUNT |
|---|---|---|---|---|---|
| | Continued | | | | |

15G. TOTAL AMOUNT OF CONTRACT   $0.00

14. TABLE OF CONTENTS

| (X) | SEC. | DESCRIPTION | PAGE(S) | (X) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | PART I - THE SCHEDULE | | | | PART II - CONTRACT CLAUSES | |
| X | A | SOLICITATION/CONTRACT FORM | 1-2 | X | I | CONTRACT CLAUSES | 14-25 |
| X | B | SUPPLIES OR SERVICES AND PRICES/COSTS | 3-4 | | | PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACH. | |
| X | C | DESCRIPTION/SPECS./WORK STATEMENT | 5-8 | X | J | LIST OF ATTACHMENTS | 26 |
| X | D | PACKAGING AND MARKING | 9 | | | PART IV - REPRESENTATIONS AND INSTRUCTIONS | |
| X | E | INSPECTION AND ACCEPTANCE | 10 | | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | |
| X | F | DELIVERIES OR PERFORMANCE | 11 | | | | |
| X | G | CONTRACT ADMINISTRATION DATA | 12 | | L | INSTRS., CONDS., AND NOTICES TO OFFERORS | |
| X | H | SPECIAL CONTRACT REQUIREMENTS | 13 | | M | EVALUATION FACTORS FOR AWARD | |

CONTRACTING OFFICER WILL COMPLETE ITEM 17 OR 18 AS APPLICABLE

17. [ ] CONTRACTOR'S NEGOTIATED AGREEMENT ...

18. [X] AWARD (Contractor is not required to sign this document.) Your offer on Solicitation Number AG-3604-S-08-0003 ...

19A. NAME AND TITLE OF SIGNER (Type or print)

20A. NAME OF CONTRACTING OFFICER
PATRICIA PIERCE

19B. NAME OF CONTRACTOR

19C. DATE SIGNED

BY
(Signature of person authorized to sign)

20B. UNITED STATES OF AMERICA
BY Patricia Pierce (Signature of the Contracting Officer)

20C. DATE SIGNED
03/28/2008

NSN 7540-01-152-8069
PREVIOUS EDITION IS UNUSABLE

Seller's Copy

STANDARD FORM 26 (Rev. 4-85)
Prescribed by GSA
FAR (48 CFR) 53.214(a)

| SOLICITATION, OFFER AND AWARD | | 1.THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700) | | RATING | PAGE OF 1 A | 32 PAGES |
|---|---|---|---|---|---|---|
| 2. CONTRACT NUMBER | 3. SOLICITATION NUMBER AG-3604-S-08-0003 | 4. TYPE OF SOLICITATION ☐ SEALED BID (IFB) XX NEGOTIATED (RFP) | | 5. DATE ISSUED 02/15/2008 | 6. REQUISITION/PURCHASE NUMBER | |

7. ISSUED BY          CODE
USDA Forest Service
11 CAMPUS BLVD, STE 200
NEWTOWN SQUARE, PA 19073

8. ADDRESS OFFER TO (If other than Item 7)
USDA Forest Service
11 CAMPUS BLVD, STE 200
NEWTOWN SQUARE, PA 19073

NOTE:  In sealed bid solicitations "offer" and "offeror" mean "bid" and "bidder".

SOLICITATION

9. Sealed offers in original and          1          copies for furnishing the supplies or services in the Schedule will be received at the place specified in Item 8, or if

handcarried, in the depository located in          CUBICLE 208T          until     2:00PM     local time   03/18/2008
                                                                                                    (Hour)                    (Date)

CAUTION - LATE Submissions, Modifications, and Withdrawals: See Section L, Provision No. 52.214-7 or 52.215-1. All offers are subject to all terms and conditions contained in this solicitation.

| 10. FOR INFORMATION CALL: | A. NAME PATRICIA PIERCE | B. TELEPHONE NO. (NO COLLECT CALLS)Area Code/Number/Extension 610-557-4248 | C. E-MAIL ADDRESS ppierce@fs.fed.us |
|---|---|---|---|

11.  TABLE OF CONTENTS

| (X) | SEC. | DESCRIPTION | PAGE(S) | (X) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | PART I - THE SCHEDULE | | | | PART II - CONTRACT CLAUSES | |
| X | A | SOLICITATION/CONTRACT FORM | 1-2 | X | I | CONTRACT CLAUSES | 14-25 |
| X | B | SUPPLIES OR SERVICES AND PRICES/COSTS | 3-4 | | | PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACH. | |
| X | C | DESCRIPTION/SPECS./WORK/STATEMENT | 5-8 | X | J | LIST OF ATTACHMENTS | 26 |
| | D | PACKAGING AND MARKING | 9 | | | PART IV - REPRESENTATIONS AND INSTRUCTIONS | |
| X | E | INSPECTION AND ACCEPTANCE | 10 | | K | REPRESENTATIVES, CERTIFICATIONS AND | |
| X | F | DELIVERIES OR PERFORMANCE | 11 | X | | OTHER STATEMENTS OF OFFERORS | 27-28 |
| X | G | CONTRACT ADMINISTRATION DATA | 12 | X | L | INSTRS., CONDS., AND NOTICES TO OFFERORS | 29-30 |
| X | H | SPECIAL CONTRACT REQUIREMENTS | 13 | X | M | EVALUATION FACTORS FOR AWARD | 31-32 |

OFFER (Must be fully completed by offeror)

NOTE: Item 12 does not apply if the solicitation includes the provisions at 52.214-16, Minimum Bid Acceptance Period.

12.  In compliance with the above, the undersigned agrees, if this offer is accepted within          90          calendar days (60 calendar days unless a different

period is inserted by the offeror) from the date for receipt of offers specified above, to furnish any or all items upon which prices are offered at the price set opposite each item, delivered at the designated point(s), within the time specified in the schedule.

| 13. DISCOUNT FOR PROMPT PAYMENT (See Section I, Clause No. 52-232-8) | 10 CALENDAR DAYS % | 20 CALENDAR DAYS % | 30 CALENDAR DAYS % | CALENDAR DAYS % |
|---|---|---|---|---|

| 14. ACKNOWLEDGMENT OF AMENDMENTS (The offeror acknowledges receipt of amendments to the SOLICITATION for offerors and related documents numbered and dated:) | AMENDMENT NO. 01 | DATE 3/7/08 | AMENDMENT NO. | DATE |
|---|---|---|---|---|

| 15A. NAME AND ADDRESS OF OFFEROR | CODE                    FACILITY Sterling Airways, Inc. 1100 Airport Rd. HORNELL NY 14843 | 16. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN OFFER (Type or Print) JAMES CAMPEN, PRESIDENT |
|---|---|---|

| 15B. TELEPHONE NO. (Include area code and extension) 585-555-2076 | 15C. CHECK IF REMITTANCE ADDRESS IS DIFFERENT FROM ABOVE - ENTER SUCH ADDRESS IN SCHEDULE. | 17. SIGNATURE | 18. OFFER DATE 3/17/08 |
|---|---|---|---|

AWARD (To be completed by Government)

| 19. ACCEPTED AS TO ITEMS NUMBERED | 20. AMOUNT -0- | 21. ACCOUNTING AND APPROPRIATION |
|---|---|---|

| 22. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION | 23. SUBMIT INVOICES TO ADDRESS SHOWN IN | ITEM 7 |
|---|---|---|
| ☐ 10 U.S.C. 2304 (c) (    )      ☐ 41 U.S.C. 253(c) (    ) | (4 copies unless otherwise specified) | |

| 24. ADMINISTERED BY (If other than Item 7)          CODE | 25. PAYMENT WILL BE MADE BY          CODE |
|---|---|

| 26. NAME OF CONTRACTING OFFICER (Type or print) PATRICIA PIERCE | 27. UNITED STATES OF AMERICA (Signature of Contracting Officer) | 28. AWARD DATE 3/28/08 |
|---|---|---|

IMPORTANT - Award will be made on this Form, or on Standard Form 26, or by other authorized official written notice.
AUTHORIZED FOR LOCAL REPRODUCTION

STANDARD FORM 33 (REV.9-97)
Prescribed by GSA - FAR (48 CFR) 53.214(c)

FOR QUOTER'S USE IN SUBMITTING A QUOTE

03/07/2008  13:03    6105574224                                                                 PAGE  02

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | 1. CONTRACT ID CODE | PAGE OF PAGES |
|---|---|---|
| | | 1 B   11 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| 01 | 03/07/2008 | 149106 | |

6. ISSUED BY    CODE

USDA Forest Service
ATTN: PATRICIA PIERCE
11 CAMPUS BLVD., STE 200
NEWTOWN SQUARE, PA 19073

7. ADMINISTERED BY (If other than Item 6)    CODE

USDA Forest Service
ATTN: PATRICIA PIERCE
11 CAMPUS BLVD., STE 200
NEWTOWN SQUARE, PA 19073

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State, and ZIP Code)

Sterling Airways Inc
7100 Airport Rd. Steuben County
Hornell, NY 14843

(X) 9A. AMENDMENT OF SOLICITATION NO.
AG-3604-S-08-0003
[X] 9B. DATED (SEE ITEM 11)
02/15/2008
10A. MODIFICATION OF CONTRACT/ORDER NO.

10B. DATED (SEE ITEM 13)

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

[X] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers [ ] is extended, [X] is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

(X) A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

[ ] B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

[ ] C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

[ ] D. OTHER (Specify type of modification and authority)

E. IMPORTANT:   Contractor [ ] is not, [X] is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

MORGANTOWN, WV AIRCRAFT AND PILOT SERVICES PROJECT
The above cited RFP is hereby amended to make the following changes: Contractors are to remove and replace attached pages. Contractor's are asked to provide Ferry Time and hourly rates from home base to each of the four airports for base year and each option year. Section C.8 (d), has been changed from Contractor's responsibility to the Government's responsibility. FAR Clause 52.216-2, ECONOMIC PRICE ADJUSTMENT STANDARD SUPPLIES (JAN 1987) is being added in full text. Option Periods 4 & 5 are being removed. All reference to a 5 year solicitation is changed to 3 year solicitation.

Proposals are due on March 18, 2008 at 2:00pm. Proposals can be faxed to Contracting Officer, Patricia Pierce at 610-557-4224 or mailed to the above Newtown Square, PA address.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) |
|---|---|
| JAMES CANEEN, PRESIDENT | PATRICIA PIERCE |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| (Signature of person authorized to sign) | 3/17/08 | (Signature of Contracting Officer) | 3/28/08 |

NSN 7540-01-152-8070                    30-105                              STANDARD FORM 30 (REV. 10-83)
Previous edition unusable                                                  Prescribed by GSA
                                                                           FAR (48 CFR) 53.243

TABLE OF CONTENTS

| | | | PAGES | |
|---|---|---|---|---|
| SECTION | DESCRIPTION | LONG PKG | SHORT PKG | TO BE RETURNED |
| | PART I - THE SCHEDULE | | | |
| A | SF-33, Solicitation, Offer and Award/Table of Contents | 1-2 | 1 | |
| B | Schedule of Items | 3-4 | 3-4 | |
| C | Description/Specifications/SOW | 5-8 | | |
| D | Packaging and Marking | 9 | | |
| E | Inspection and Acceptance | 10 | | |
| F | Deliveries or Performance | 11 | | |
| G | Contract Administration Data | 12 | 12 | |
| H | Special Contract Requirements | 13 | | |
| | PART II - CONTRACT CLAUSES | | | |
| I | Contract Clauses | 14-25 | | |
| | PART III - LIST OF DOCUMENTS, EXHIBITS, & OTHER ATTACHMENTS | | | |
| J | List of Drawings and Attachments | 26 | | |
| | Attachment I, Wage Determination | 4 Pages | | |
| | Attachment II, Contractor Responsibility | 2 Pages | 2 Pages | |
| | Sample and Guidance on Submitting Proper Invoice | 3 Pages | | |

Electronic Payment (All contractors need to register in www.ccr.gov)

PART IV - REPRESENTATIONS AND INSTRUCTIONS

| K | Representations, Certifications, and Other Statement of Offerors | 27-28 | 27-28 | |
| L | Instructions, Conditions, & Notices to Offerors | 29-30 | | |
| M | Evaluation Factors for Award | 31-32 | | |

03/07/2008  13:03    6105574224                                      PAGE  84

Amendment 01  SERVICE RFP                              SOL NO: AG-3604-S-08-0003
                                                       UNIT: Morgantown, WV;
                                                       PROJ NAME: Aircraft and Pilot Services
                                                       PAGE 3 of 32;

## PART I—THE SCHEDULE
### SECTION B—SUPPLIES OR SERVICES AND PRICES/COSTS
### SCHEDULE OF ITEMS

**B.1 Description of Requirement**

The contractor shall provide appropriate and Forest Service certified and approved aircraft and pilot as described in Section C in order for the Government to conduct aerial surveys. Contractor shall also provide all necessary management, supervision, manpower, labor, material, supplies, equipment, and transportation and shall plan, schedule, coordinate and assure effective performance of all services described in Section C. The Contractor will meet Forest Service employees at one of the four listed airports:

### MORGANTOWN, WV AIRPORT
### OR
### ELKINS, WV AIRPORT
### OR
### FREDERICK, MD AIRPORT
### OR
### CLARION, PA AIRPORT

The Term of this Contract will be a base 1-year period with 4, 1-year option periods. We expect this contract to commence late-March, 2008.

1) Contractor shall provide name of Aircraft for Aerial Surveying ___*CESSNA 2 l0*___

**B.2 OFFER FOR AIRCRAFT AND PILOT**

For base year and each of the four option years, quote an hourly rate for providing an aircraft and pilot for the government to conduct aerial surveying as described in Section C. The Government's minimum requirement each year the contract is extended under this IDIQ contract is $15,000.

| 0100 BASE YEAR (March, 2008 through March, 2009) | HOURLY RATE | ESTIMATED QUANTITY | TOTAL AMOUNT |
|---|---|---|---|
| 0101  Hourly Rate for providing airplane & pilot for Aerial Surveying conducted by Government | $ *425* | X  60hrs = | $ *25,500* |

| | FERRY TIME | HOURLY RATE | |
|---|---|---|---|
| 0102  Ferry Time and hourly rate to Morgantown, WV Airport: | *1.4* | X $ *425* | = $ *595* |
| 0103  Ferry Time and hourly rate to Elkins, WV Airport: | *1.7* | X $ *425* | = $ *722.50* |
| 0104  Ferry Time and hourly rate to Frederick, MD Airport: | *1.3* | X $ *425* | = $ *552.50* |
| 0105  Ferry Time and hourly rate to Clarion, PA Airport: | *.8* | X $ *425* | = $ *340.00* |

| 0200 Option Year 1 (March, 2009 through March, 2010) | HOURLY RATE | ESTIMATED QUANTITY | TOTAL AMOUNT |
|---|---|---|---|
| 0201  Hourly Rate for providing airplane and pilot for Aerial Surveying conducted by Government ......... | $ *450* | X  60hrs = | $ *27,000* |

03/8/7/2008  13:03   51855/4224                                        PAGE   05

Amendment 01   SERVICE RFP

**FERRY TIME   HOURLY RATE**

0202 Ferry Time and hourly rate to Morgantown, WV Airport:    1.4 x $ 450 = $ 630

0203 Ferry Time and hourly rate to Elkins, WV Airport:    1.7 x $ 450 = $ 765

0204 Ferry Time and hourly rate to Frederick, MD Airport:    1.3 x $ 450 = $ 585

0205 Ferry Time and hourly rate to Clarion, PA Airport:    .8 x $ 450 = $ 360

**0300 Option Year 2 (March, 2010 March, 2011)**

| | HOURLY RATE | ESTIMATED QUANTITY | TOTAL AMOUNT |
|---|---|---|---|

0301 Hourly Rate for providing airplane and pilot for Aerial Surveying conducted by Government ......... $ 475 X 60hrs = $ 28,500

**FERRY TIME   HOURLY RATE**

0302 Ferry Time and hourly rate to Morgantown, WV Airport:    1.4 x $ 475 = $ 665

0303 Ferry Time and hourly rate to Elkins, WV Airport:    1.7 x $ 475 = $ 802.50

0304 Ferry Time and hourly rate to Frederick, MD Airport:    1.3 x $ 475 = $ 617.50

0305 Ferry Time and hourly rate to Clarion, PA Airport:    .8 x $ 475 = $ 380.

## B.3  QUOTERS PLEASE NOTE:

A. Typical aircraft use in a given year is estimated at approximately 60 hours of aerial surveying work.
B. Any per diem rate owed the contractor will be in accordance with the Federal Travel Regulations.
C. No standby charges as long as the Government averages at least 4 hours of flight time per day in any one week that the Government has control of aircraft. E.g, Monday 3 hours of flight time and Tuesday 5 hours of flight time. Averaged 4 hours for that week, no standby charges.
B. Before preparing your offer, carefully review Sections K, L, and M.
C. One contract will be awarded in accordance with the evaluation factors in Section L and M.

## B.4  PERIOD OF THE CONTRACT

This contract is for Base Year (March, 2008 thru March, 2009) plus four option periods for possible extensions. This is an unilateral right of the Government to extend. Each time an option to extend is exercised; it will be for a period of one additional period. Contractor will be notified in accordance with appropriate clause contained in Section I.

## B.5  TYPE OF CONTRACT

The Government contemplates award of an indefinite delivery, indefinite quantity (IDIQ) contract resulting from this solicitation.

## B.6 AGAR 452.216-73 MINIMUM AND MAXIMUM CONTRACT AMOUNTS (FEB 1988)

During the period specified in FAR clause 52.216-18, ORDERING, the Government shall place orders totaling a minimum of $15,000, but not in excess of $100,000 over the total life of the contract.

SOLICITATION 01 SERVICE RFP .

## B.7  FAR 52.217-5   Evaluation of Options (JUL 1990)

Except when it is determined in accordance with FAR 17.206(b) not to be in the Government's best interest, the Government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement. Evaluation of options will not obligate the Government to exercise the option(s).

## B.8  AGAR 452.216-72     Evaluation Quantities – Indefinite Delivery Contract (FEB 1988)

To evaluate offers for award purposes, the Government will apply the offeror's proposed fixed-prices/rates to the estimated quantities included in the solicitation, and will add other direct costs if applicable.

## B.9  52.216-2 Economic Price Adjustment—Standard Supplies.

ECONOMIC PRICE ADJUSTMENT—STANDARD SUPPLIES (JAN 1997)

   (a) The Contractor warrants that the unit price stated in the Schedule for ALL ITEMS is not in excess of the Contractor's applicable established price in effect on the contract date for like quantities of the same item. The term "unit price" excludes any part of the price directly resulting from requirements for preservation, packaging, or packing beyond standard commercial practice. The term "established price" means a price that—
      (1) Is an established catalog or market price for a commercial item sold in substantial quantities to the general public; and
      (2) Is the net price after applying any standard trade discounts offered by the Contractor.
   (b) The Contractor shall promptly notify the Contracting Officer of the amount and effective date of each decrease in any applicable established price. Each corresponding contract unit price shall be decreased by the same percentage that the established price is decreased. The decrease shall apply to those items delivered on and after the effective date of the decrease in the Contractor's established price, and this contract shall be modified accordingly.
   (c) If the Contractor's applicable established price is increased after the contract date, the corresponding contract unit price shall be increased, upon the Contractor's written request to the Contracting Officer, by the same percentage that the established price is increased, and the contract shall be modified accordingly, subject to the following limitations:
      (1) The aggregate of the increases in any contract unit price under this clause shall not exceed 10 percent of the original contract unit price.
      (2) The increased contract unit price shall be effective—
         (i) On the effective date of the increase in the applicable established price if the Contracting Officer receives the Contractor's written request within 10 days thereafter; or
         (ii) If the written request is received later, on the date the Contracting Officer receives the request.
      (3) The increased contract unit price shall not apply to quantities scheduled under the contract for delivery before the effective date of the increased contract unit price, unless failure to deliver before that date results from causes beyond the control and without the fault or negligence of the Contractor, within the meaning of the Default clause.
      (4) No modification increasing a contract unit price shall be executed under this paragraph (c) until the Contracting Officer verifies the increase in the applicable established price.
      (5) Within 30 days after receipt of the Contractor's written request, the Contracting Officer may cancel, without liability to either party, any undelivered portion of the contract items affected by the requested increase.
   (d) During the time allowed for the cancellation provided for in paragraph (c)(5) of this clause, and thereafter if there is no cancellation, the Contractor shall continue deliveries according to the contract delivery schedule, and the Government shall pay for such deliveries at the contract unit price, increased to the extent provided by paragraph (c) of this clause.

(End of clause)

## SECTION C--DESCRIPTION/SPECIFICATIONS/STATEMENT OF WORK

### C.1 MINIMUM REQUIREMENTS:

- Three (3) passenger seats not including pilot, but including copilot seat in an aircraft, normally single-pilot operated.
- High wing, single engine.
- Cabin window view must not be limited by external fuel pods or other obstructions (wing struts not a factor).
- Equipped for single pilot day/night VFR passenger operations per the requirements of 14 CFR 135.
- Aircraft shall comply with all FAR Part 135 requirements.
- Aircraft shall be inspected by the Regional Aviation Maintenance Program Manager before contract begins.
- Pilot shall pass a regional aviation evaluation (check ride) before contract begins.
- Pilot shall be required to understand and sign the Pilot Safety Briefing.
- Prior to commencement of work, certificate of insurance shall be submitted to the Contracting Officer.
- Minimum engine requirements for aircraft shall be 250 HP or above.
- Payload of 800 pounds at 30 degrees C at 4,000 feet pressure altitude. Payload is determined by subtracting the sum of the weight of the aircraft equipped to meet the specifications of this contract, the pilot's weight equipped for flight, and the weight of fuel sufficient for a flight of 275 nautical miles with VFR reserves, from the maximum certificated takeoff weight for the environmental conditions specified.
- Installation of at least two 3-pin power supply connectors on individual 10 amp circuit breakers for powering computerized mapping equipment and portable FM radio. The 3-pin connectors and installation instructions will be provided by the government.
- Installation of a government-furnished Blue Sky automated flight following (AFF) system and external antennae. Additional AFF information follows at the end of this section.
- External antennae for use with a portable, government-furnished VHF-FM communications radio.

**Offers should assure their specific make and model aircraft is capable of meeting the above minimum requirements by including information with their offer to demonstrate such (Evaluation Factor).**

### C.2 TARGET REQUIREMENTS

- One panel mounted VHF-FM aeronautical mobile transceiver (FM-1), which provides selection of either narrowband (12.5 kHz) or wide-band (25.0 kHz) channel spacing operation on each channel, or properly wired with a three pin connector to accept portable VHF-FM aeronautical mobile transceiver. **Automobile FM radios do not meet this requirement of a panel mounted transceiver.**
- Voice activated internal intercom system capable of handling internal communication needs of pilot and three passengers.
- Aircraft-installed automated flight following (AFF) system.

### C.3 Government Furnished Property:
Where applicable, the following equipment will be supplied by the government:
- Portable VHF-FM aeronautical mobile transceiver.
- Blue Sky Automated Flight Following device
### C.4 Contractor Furnished Property:
- GPS unit for flying route and waypoint navigation.
- Portable voice activated intercom system.
- High-wing aircraft and pilot for aerial survey work.

### C.5 Pilot Requirements:

Pilots shall have logged minimum flying time as pilot-in-command as follows:

- 1,500 hours    Total pilot time.
- 1,200 hours    PIC, airplanes.
- 200 hours    Category and class to be flown.
- 75 hours    Actual or simulated instrument flight time (including 50 hours in flight).
- 500 hours    Cross-country.
- 200 hours    Typical terrain and landing facilities; mountain.
- 25 hours   Total time in make, model, and series of aircraft to be used.
- 5 hours    Total time in make and model, preceding 30 days.
- 10 hours    Total time in class, preceding 60 days.
- 100 hours    Total time in class, preceding 12 months.

The Contractor shall submit an experience resume for each pilot offered for approval. The resume shall include names and pilot addresses of past employers, substantiation of related type and typical terrain flying and must show any and all accidents involving aircraft.

## C.6 Scope of work:

### Provide for Aerial Survey Flights

Personnel from NA and state cooperators use small airplanes for forest pest surveys, forest resource surveys, and other natural resource surveys. Most of these flights are conducted in a single engine high-winged airplane.

Aerial detection surveys, also known as aerial sketchmapping, is a remote sensing technique of observing forest change events from an aircraft and documenting them manually onto a map. Aerial surveys are an effective and economical means of monitoring and mapping insect, disease and other forest disturbances.

The aviation services are required to perform aerial surveys throughout Ohio, Maryland, Pennsylvania, West Virginia, New Jersey and Delaware. Typical aircraft use in a given year will be around 60 hours. The majority of the work will be conducted in June and July. The aircraft may be used occasionally other parts of the year in the event an emergency arises. The typical altitude will be 1000' to 1500' AGL (Above Ground Level) for all aerial survey missions.

## C.7 Guarantee

The following shall be paid/reimbursed under this contract:
- Hourly flight time
- Guarantee of an average of 4 hours of flight time per day per overnight away from vendor home base
- Per diem (FTR – Federal Travel Regulations/ http://www.gsa.gov/ (domestic))
- Tie down fees, landing fees, hangar fees
- Miscellaneous (receipt is required for purchases over $75.00).

Ferry cost will be paid by the Government from the Contractor's home base to Bradford (PA) Airport, Clarion County (PA) Airport, Hagerstown (MD) Airport, Fort Meade (MD) Airport or Morgantown (WV) Airport at the start of each exclusive use period, and to the Contractor's home base at the end of each exclusive use period. This will be a separate line item in Section B, Schedule of Items and will be considered when awarding the contract.

Response Time – Since aerial survey missions that relate to insect and disease damage are time sensitive, a notice of 24 hours will be given when requesting aircraft services. Successful contractor will need to certify to the government that they will have an aircraft and pilot available at one of the above five airports within 24 hours notice. Government will designate which airport when ordering aviation services.

## C.8 Automated Flight Following

a. One Automated Flight Following (AFF) system compatible with the government's AFF tracking network (Webtracker) is required. Not all available AFF systems are compatible with Webtracker nor meet Webtracker's requirements. The contractor shall ensure that the AFF system offered is compatible with Webtracker. To view Webtracker's current compatibility requirements refer to https://www.aff.gov.

b. The AFF system shall be powered by the aircraft's electrical system, either portable or permanent unit installed per the manufacturer's installation manual, and operational in all phases of flight. AFF equipment shall utilize as a minimum: Satellite communications, provide data to the Government's Webtracker software, use aircraft power via a dedicated circuit breaker for power protection, and be mounted so as to not endanger any occupant from AFF equipment during periods of turbulence. Antennas should be placed whereas they have the best view of the overhead sky as possible. Externally mounted antennas are recommended to improve system performance. Any AFF manufacturer required pilot display(s) or control(s) shall be visible/selectable by the pilot(s). Remote equipment having visual indicators should be mounted in such a manner as to allow visual indicators to be easily visible.

c. AFF communications shall be fully operational in the lower 48 states. Contractors accepting dispatches to the State of Alaska, Southern Canada, or Western Canada must have an AFF system capable of being tracked in these locations at all times. Not all manufacturers' AFF equipment communication links will operate effectively in all geographic areas.

d. The Government will maintain a subscription service through the AFF equipment provider allowing AFF position reporting for satellite tracking via Webtracker. The position-reporting interval shall be every two minutes while the aircraft is in flight. The Government shall register their AFF equipment with the Boise Help Desk providing: Complete tail number, manufacturer and serial number of the AFF transceiver; aircraft make and model; and Government contact information. If the Government relocates previously registered AFF equipment into another aircraft, then the Government shall contact the Boise Help Desk making the appropriate changes prior to aircraft use. In all cases, the Government shall ensure that the correct aircraft information is indicated within Webtracker. The Government shall contact the Boise Help Desk of system changes, scheduled maintenance, and planned service outages.

e. Registration contact information, a web accessible feedback form, and additional information is available at: https://www.aff.gov. The Boise Help Desk can be reached at (800) 253-5559 or (208) 387-5290.

f. Prior to the aircraft's annual Contract inspection, the Contractor shall ensure compliance with all AFF systems requirements. The Contractor shall additionally perform an operational check of the system. As a minimum, the operational check shall consist of confirming the aircraft being tested is displayed in Webtracker (indicating it is currently transmitting data to Webtracker) and that all information displayed in Webtracker is current. A username and password is required to access Webtracker. Log on to the AFF website at https://www.aff.gov to request a username and password, or contact the Boise help desk. When the aircraft passes the operational check, an aircraft log book entry shall be made.

g. This clause incorporates Specification Section Supplement available at: https://www.aff.gov/contractspecs with the same force and effect as if they were presented as full text herein.

Amendment 01 SERVICE RFP_

SOL NO: AG-3604-S-08-0003
UNIT: Morgantown, WV
PROJ NAME: Aircraft and Pilot Services
PAGE 9 of 32

<u>C.9 Safety Plan</u>: The Government employee(s) and contractor will have a Safety Plan in place prior to each flight.

## C.10 – Issuing Delivery Orders

Reference Clauses: Ordering FAR 52.216-18, Delivery Order Limitations FAR 52.216-19 and Indefinite Quantity FAR 52.216-22.

<u>1</u> - All services shall be procured under the contract through the issuance of task orders. These task orders will be issued on an Optional Form 347 and signed by a Contracting Officer of the Northern Research Station. All task orders are subject to the terms and conditions of this contract. In the event of conflict between the task order and this contract the contract shall control. If mailed, a task order is considered "issued" when the government deposits the order in the mail.

<u>2</u> – Individual projects contemplated will be sent to the contractor for pricing prior to issuance of any task order. The contractor shall submit a detailed proposal to the Government outlining the hourly costs, material, etc. The Government will issue a written task order. Task orders for a project will contain a firm fixed amount that will be the total compensation for that project. This amount shall not be changed unless the requirements of the project are changed, and than only if the Contracting Officer signs prior written modification. Each task order shall include, at a minimum, all of the following information:

a. The contract number;
b. Task order number;
c. Authorized signature of the warranted Contracting Officer;
d. Detailed description of the task order or service to be performed;
e. Firm fixed price for the project;
f. Firm deliver dates;
g. Designation of Contracting Officer's Technical Representative (COR);
h. Government-furnished property or supplies provided (if applicable);
i. Much of the information discussed in the pricing/scope and negotiations.
j. Anything else the CO deems appropriate.

## C.11 - Task Order Modifications

Any change to a task order will be made in writing as modifications. Task order modifications will be issued only by the Contract Officer and shall be identified as a modification of a specific task order. The amount of the original task order shall not be changed unless the requirements of the project are changed, and than only then by written modification signed by the Contracting Officer.

## SECTION D--PACKAGING AND MARKING

{For this Solicitation, there are NO clauses in this Section}

## SECTION E--INSPECTION AND ACCEPTANCE

#### E.1 FAR 52.246-4 Inspection of Services—Fixed-Price.

INSPECTION OF SERVICES—FIXED-PRICE (AUG 1996)

(a) *Definition.* "Services," as used in this clause, includes services performed, workmanship, and material furnished or utilized in the performance of services.

(b) The Contractor shall provide and maintain an inspection system acceptable to the Government covering the services under this contract. Complete records of all inspection work performed by the Contractor shall be maintained and made available to the Government during contract performance and for as long afterwards as the contract requires.

(c) The Government has the right to inspect and test all services called for by the contract, to the extent practicable at all times and places during the term of the contract. The Government shall perform inspections and tests in a manner that will not unduly delay the work.

(d) If the Government performs inspections or tests on the premises of the Contractor or a subcontractor, the Contractor shall furnish, and shall require subcontractors to furnish, at no increase in contract price, all reasonable facilities and assistance for the safe and convenient performance of these duties.

(e) If any of the services do not conform with contract requirements, the Government may require the Contractor to perform the services again in conformity with contract requirements, at no increase in contract amount. When the defects in services cannot be corrected by reperformance, the Government may—

(1) Require the Contractor to take necessary action to ensure that future performance conforms to contract requirements; and

(2) Reduce the contract price to reflect the reduced value of the services performed.

(f) If the Contractor fails to promptly perform the services again or to take the necessary action to ensure future performance in conformity with contract requirements, the Government may—

(1) By contract or otherwise, perform the services and charge to the Contractor any cost incurred by the Government that is directly related to the performance of such service; or

(2) Terminate the contract for default.

(End of clause)

## SECTION F--DELIVERIES OR PERFORMANCE

### F.1 FAR 52.252-2  Clauses Incorporated by Reference (FEB 1998)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this/these address(es):  www.arnet.gov/far/

FEDERAL ACQUISITION REGULATION (48 CFR CHAPTER 1) CLAUSES

52.242-15     Stop Work Order  (AUG 1989)
52.242-17     Government Delay of Work (APR 1984)

### F.2  AGAR 452.211-74   Period of Performance (FEB 1988)

The period of performance of this contract is from date of award expected mid March, 2008 through March, 2009 with four (4) one year options.

SERVICE REP

SOL NO: AG-3604-S-08-0003
UNIT: Morgantown, WV
PROJ NAME: Aircraft and Pilot Services
PAGE 4 of 8
12  32

## SECTION G--CONTRACT ADMINISTRATION DATA

### G.1 AGAR 452.215-73  Post Award Conference (NOV 1996)

A post award conference with the successful offeror is required. It will be scheduled within ten (10) days after the date of contract award. The conference will be held at USDA Forest Service, 271 Mast Road, Durham, NH 03824.

### G.2 DESIGNATION OF CONTRACTING OFFICER'S REPRESENTATIVE

The Contracting Officer designates the Contracting Officer's Representative (COR). The COR is responsible for administering the performance of work under this contract. In no event, however, will any understanding, agreement, modification, change order, or other matter deviating from the terms of this contract be effective or binding upon the Government unless formalized by proper contractual documents executed by the Contracting Officer prior to completion of the contract.

The Contracting Officer should be informed, as soon as possible, of any actions or inactions by the Contractor or the Government which will change the required delivery or completion times stated in the contract, and the contract will be modified accordingly. (This does not apply to individual task assignments which were issued by the COR, provided they do not affect the delivery schedule or performance period stated in the contract.)

On all matters that pertain to the contract terms, the Contractor must communicate with the Contracting Officer. Whenever, in the opinion of the Contractor, the COR requests effort outside the scope of the contract, the Contractor should so advise the COR. If the COR persists and there still exists a disagreement as to proper contractual coverage, the Contracting Officer should be notified immediately, preferably in writing if time permits. Proceeding with work without proper contractual coverage could result in nonpayment or necessitate submittal of a contract claim.

### G.3 PROJECT MANAGER

The offeror is requested to designate a Project Manager to be contacted for prompt contract administration:

JAMES CANFIELD

Telephone Number (including cell phone if available)

585  335  2076

The contractor shall provide a Project Manager who shall have the authority to make any no-cost contract technical, hiring and dismissal decisions, or special arrangements regarding this contract. This individual shall be responsible for the overall management and coordination of this contract and shall act as the central point of contact with the Government. The Project Manager, or a designated representative, shall have full authority to act for the Contractor in the performance of the required services. The Project Manager, or a designated representative, shall meet with the Contracting Officer's Representative (COR) to discuss problem areas as they occur. The Project Manager or his/her representative shall respond within four hours after notification of the existence of a problem. The Project Manager shall be able to fluently read, write, and speak the English language.

### G.4 INVOICE REQUIREMENTS

Monthly invoices, in areas, are authorized. Contractor shall fax a copy of the invoice to COR and mail original to the Contracting Officer. The COR will inspect and accept work. If no work is anticipated contractor shall document by memo and fax to CO within 7 days prior to the end of that month.

ERVICE RFP

# SECTION H--SPECIAL CONTRACT REQUIREMENTS

## H.1 AGAR 452.237-74 Key Personnel (FEB 1988)

(a) The Contractor shall assign to this contract the following key personnel: **Pilot.**

(b) During the first ninety (90) days of performance, the Contractor shall make no substitutions of key personnel unless the substitution is necessitated by illness, death, or termination of employment. The Contractor shall notify the Contracting Officer within 15 calendar days after the occurrence of any of these events and provide the information required by paragraph (c) below. After the initial 90-day period, the Contractor shall submit the information required by paragraph (c) to the Contracting Officer at least 15 days prior to making any permanent substitutions.

(c) The Contractor shall provide a detailed explanation of the circumstances necessitating the proposed substitutions, complete resumes for the proposed substitutes, and any additional information requested by the Contracting Officer. Proposed substitutes should have comparable qualifications to those of the persons being replaced. The Contracting Officer will notify the Contractor within 15 calendar days after receipt of all required information of the decision on substitutions. The contract will be modified to reflect any approved changes of key personnel.

## H.2 AGAR 452.228-71 Insurance Coverage (NOV 1996) Alternate I (NOV 1996)

Pursuant to FAR clause 52.228-5, Insurance-Work on a Government Installation, the Contractor will be required to present evidence to show, as a minimum, the amounts of insurance coverage indicated below:

(a) Workers Compensation and Employer's Liability. The Contractor is required to comply with applicable Federal and State workers' compensation and occupational disease statutes. If occupational diseases are not compensable under those statues, they shall be covered under the employer's liability section of the insurance policy, except when contract operations are so commingled with a Contractor's commercial operations that it would not be practical to require this coverage. Employer's liability coverage of at least $100,000 shall be required, except in States with exclusive or monopolistic funds that do not permit worker's compensation to be written by private carriers.

(b) General Liability.
   (1) The Contractor shall have bodily injury liability insurance coverage written on a comprehensive form of policy of at least $500,000 per occurrence.
   (2) The Contractor shall have property damage liability insurance shall be required in the amount of $100,000 per occurrence.

(c) Automobile Liability. The Contractor shall have automobile liability insurance written on a comprehensive form of policy. The policy shall provide for bodily and property damage liability covering the operation of all automobiles used in connection with performing the contract. Policies covering automobiles operated in United States shall provide coverage of at least $200,000 per person and $50,000 per occurrence for bodily injury and $20,000 per occurrence for property damage or loss.

(d) Aircraft Public and Passenger Liability. When aircraft are used in connection with performing the contract, the Contractor shall have aircraft public and passenger liability insurance. Coverage shall be at least $200,000 per person and $500,000 per occurrence for bodily injury, other than passenger injury. Coverage for passenger injury shall be at least $200,000 multiplied by the number of seats or passengers, whichever is greater.

## PART II--CONTRACT CLAUSES

### SECTION I--CONTRACT CLAUSES

#### I.1 FAR 52.252-2 Clauses Incorporated by Reference (FEB 1998)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this/these address(es):
www.arnet.gov/far/
www.usda.gov/procurement/policy/agar.html

FEDERAL ACQUISITION REGULATION (48 CFR CHAPTER 1) CLAUSES

| | |
|---|---|
| 52.202-1 | Definitions (JUL 2004) |
| 52.203-3 | Gratuities (APR 1984) |
| 52.203-5 | Covenant Against Contingent Fees (APR 1984) |
| 52.203-6 | Restrictions on Subcontractor Sales to the Government (JUL 1995) |
| 52.203-7 | Anti-Kickback Procedures (JUL 1995) |
| 52.203-8 | Cancellation, Rescission, and Recovery of Funds for Illegal or Improper Activity (JAN 1997) |
| 52.203-10 | Price or Fee Adjustment for Illegal or Improper Activity (JAN 1997) |
| 52.203-12 | Limitation on Payments to Influence Certain Federal Transactions (SEP 2005) |
| 52.204-4 | Printed or Copied Double- Sided on Recycled Paper (AUG 2000) |
| 52.204-9 | Personal Identity Verification of Contractor Personnel (JAN 2006) |
| 52.209-6 | Protecting the Government's Interest when Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment (JAN 2005) |
| 52.215-2 | Audit and Records -- Negotiation (JUN 1999) |
| 52.215-8 | Order of Precedence--Uniform Contract Format (OCT 1997) |
| 52.217-2 | Cancellation Under Multiyear Contracts (OCT 1997) |
| 52.219-6 | Notice of Total Small Business Set-Aside (JUN 2003) |
| 52.219-8 | Utilization of Small Business Concerns (MAY 2004) |
| 52.219-9 | Small Business Subcontracting Plan (JUL 2005) *(Applicable if > $500,000)* Alternate II (Oct 2001) |
| 52.219-14 | Limitations on Subcontracting (DEC 1996) |
| 52.219-16 | Liquidated Damages --Subcontracting Plan (JAN 1999) *(Applicable if > $500,000)* |
| 52.219-27 | Notice of Total Service-Disabled Veteran-Owned Small Business Set-Aside (MAY 2004) |
| 52.222-3 | Convict Labor (JUN 2003) |
| 52.222-4 | Contract Work Hours and Safety Standards Act -- Overtime Compensation (JUL 2005) |
| 52.222-21 | Prohibition of Segregated Facilities (FEB 1999) |
| 52.222-26 | Equal Opportunity (APR 2002) |
| 52.222-35 | Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and other Eligible Veterans (DEC 2001) |
| 52.222-36 | Affirmative Action for Workers with Disabilities (JUN 1998) |
| 52.222-37 | Employment Reports on Special Disabled Veterans, Veterans of the Vietnam Era, and other Eligible Veterans (DEC 2001) |
| 52.222-41 | Service Contract Act of 1965, as Amended (JUL 2005) |
| 52.222-43 | Fair Labor Standards Act and Service Contract Act – Price Adjustment (Multiple Year and Option Contracts) (MAY 1989) |
| 52.223-6 | Drug-Free Workplace (MAY 2001) |

| 52.223-14 | Toxic Chemical Release Reporting (AUG 2003) |
|---|---|
| 52.225-13 | Restrictions on Certain Foreign Purchases (FEB 2006) |
| 52.227-1 | Authorization and Consent (JUL 1995) |
| 52.227-2 | Notice and Assistance Regarding Patent and Copyright Infringement (AUG 1996) |
| 52.228-4 | Work on a Government Installation |
| 52.229-3 | Federal, State, and Local Taxes (APR 2003) |
| 52.232-1 | Payments (APR 84) |
| 52.232-8 | Discounts for Prompt Payment (FEB 2002) |
| 52.232-9 | Limitation on Withholding of Payments (APR 1984) |
| 52.232-11 | Extras (APR 1984) |
| 52.232-17 | Interest (JUN 1996) |
| 52.232-18 | Availability of Funds (APR 1984) |
| 52.232-23 | Assignment of Claims (JAN 1986) |
| 52.232-25 | Prompt Payment (OCT 2003) |
| 52.232-33 | Payment by Electronic Funds Transfer -- Central Contractor Registration (OCT 2003) |
| 52.233-1 | Disputes (JULY 2002) |
| 52.233-3 | Protest After Award (AUG 1996) |
| 52.233-4 | Applicable Law for Breach of Contract Claim (OCT 2004) |
| 52.237-2 | Protection of Government Buildings, Equipment, and Vegetation (APR 1984) |
| 52.242-13 | Bankruptcy (JUL 1995) |
| 52.243-1 | Changes--Fixed-Price (AUG 1987)--Alternate I (APR 1984) |
| 52.244-6 | Subcontracts for Commercial Items (FEB 2006) |
| 52.245-1 | Property Records (APR 1984) |
| 52.245-2 | Government Property (Fixed-Price Contracts) (MAY 2004) |
| 52.246-25 | Limitation of Liability---Services (FEB 1997) |
| 52.248-1 | Value Engineering (FEB 2000) |
| 52.249-2 | Termination for Convenience of the Government (Fixed-Price) (MAY 2004) |
| 52.249-8 | Default (Fixed-Price Supply and Service) (APR 1984) |
| 52.253-1 | Computer Generated Forms (JAN 1991) |

AGRICULTURE ACQUISITION REGULATION (48 CFR CHAPTER 4) CLAUSES

| 452.237-70 | Loss, Damage, Destruction or Repair (FEB 1988) |
|---|---|
| 452.237-75 | Restrictions Against Disclosure (FEB 1988) |

## I.2 52.204-7 Central Contractor Registration (Oct 2003)

(a) Definitions. As used in this clause-

"Central Contractor Registration (CCR) database" means the primary Government repository for Contractor information required for the conduct of business with the Government.

"Data Universal Numbering System (DUNS) number" means the 9-digit number assigned by Dun and Bradstreet, Inc. (D&B) to identify unique business entities.

"Data Universal Numbering System +4 (DUNS+4) number" means the DUNS number assigned by D&B plus a 4-character suffix that may be assigned by a business concern. (D&B has no affiliation with this 4-character suffix.) This 4-character suffix may be assigned at the discretion of the business concern to establish additional CCR records for identifying alternative Electronic Funds Transfer (EFT) accounts (see the FAR at Subpart 32.11) for the same parent concern.

"Registered in the CCR database" means that-

(1) The Contractor has entered all mandatory information, including the DUNS number or the DUNS+4 number, into the CCR database; and

(2) The Government has validated all mandatory data fields and has marked the record "Active".

(b)(1) By submission of an offer, the offeror acknowledges the requirement that a prospective awardee shall be registered in the CCR database prior to award, during performance, and through final payment of any contract, basic agreement, basic ordering agreement, or blanket purchasing agreement resulting from this solicitation.

(2) The offeror shall enter, in the block with its name and address on the cover page of its offer, the annotation "DUNS" or "DUNS +4" followed by the DUNS or DUNS +4 numbers that identifies the offeror's name and address exactly as stated in the offer. The DUNS number will be used by the Contracting Officer to verify that the offeror is registered in the CCR database.

(c) If the offeror does not have a DUNS number, it should contact Dun and Bradstreet directly to obtain one.
    (1) An offeror may obtain a DUNS number-
        (i) If located within the United States, by calling Dun and Bradstreet at 1-866-705-5711 or via the Internet at *http://www.dnb.com*; or
        (ii) If located outside the United States, by contacting the local Dun and Bradstreet office.
    (2) The offeror should be prepared to provide the following information:
        (i) Company legal business.
        (ii) Tradestyle, doing business, or other name by which your entity is commonly recognized.
        (iii) Company Physical Street Address, City, State, and Zip Code.
        (iv) Company Mailing Address, City, State and Zip Code (if separate from physical).
        (v) Company Telephone Number.
        (vi) Date the company was started.
        (vii) Number of employees at your location.
        (viii) Chief executive officer/key manager.
        (ix) Line of business (industry).
        (x) Company Headquarters name and address (reporting relationship within your entity).

(d) If the Offeror does not become registered in the CCR database in the time prescribed by the Contracting Officer, the Contracting Officer will proceed to award to the next otherwise successful registered Offeror.

(e) Processing time, which normally takes 48 hours, should be taken into consideration when registering. Offerors who are not registered should consider applying for registration immediately upon receipt of this solicitation.

(f) The Contractor is responsible for the accuracy and completeness of the data within the CCR database, and for any liability resulting from the Government's reliance on inaccurate or incomplete data. To remain registered in the CCR database after the initial registration, the Contractor is required to review and update on an annual basis from the date of initial registration or subsequent updates its information in the CCR database to ensure it is current, accurate and complete. Updating information in the CCR does not alter the terms and conditions of this contract and is not a substitute for a properly executed contractual document.

(g) (1) (i) If a Contractor has legally changed its business name, "doing business as" name, or division name (whichever is shown on the contract), or has transferred the assets used in performing the contract, but has not completed the necessary requirements regarding novation and change-of-name agreements in Subpart 42.12, the Contractor shall provide the responsible Contracting Officer a minimum of one business day's written notification of its intention to (A) change the name in the CCR database; (B) comply with the requirements of Subpart 42.12 of the FAR; and (C) agree in writing to the timeline and procedures specified by the responsible Contracting Officer. The Contractor must provide with the notification sufficient documentation to support the legally changed name.

(ii) If the Contractor fails to comply with the requirements of paragraph (g)(1)(i) of this clause, or fails to perform the agreement at paragraph (g)(1)(i)(C) of this clause, and, in the absence of a properly executed

novation or change-of-name agreement, the CCR information that shows the Contractor to be other than the Contractor indicated in the contract will be considered to be incorrect information within the meaning of the "Suspension of Payment" paragraph of the electronic funds transfer (EFT) clause of this contract.

(2) The Contractor shall not change the name or address for EFT payments or manual payments, as appropriate, in the CCR record to reflect an assignee for the purpose of assignment of claims (see FAR Subpart 32.8, Assignment of Claims). Assignees shall be separately registered in the CCR database. Information provided to the Contractor's CCR record that indicates payments, including those made by EFT, to an ultimate recipient other than that Contractor will be considered to be incorrect information within the meaning of the "Suspension of payment" paragraph of the EFT clause of this contract.

(h) Offerors and Contractors may obtain information on registration and annual confirmation requirements via the internet at *http://www.ccr.gov* or by calling 1-888-227-2423, or 269-961-5757.

## I.3 52.222-39 NOTIFICATION OF EMPLOYEE RIGHTS CONCERNING PAYMENT OF UNION DUES OR FEES (DEC 2004)

(a) *Definition.* As used in this clause-

"United States" means the 50 States, the District of Columbia, Puerto Rico, the Northern Mariana Islands, American Samoa, Guam, the U.S. Virgin Islands, and Wake Island.

(b) Except as provided in paragraph (e) of this clause, during the term of this contract, the Contractor shall post a notice, in the form of a poster, informing employees of their rights concerning union membership and payment of union dues and fees, in conspicuous places in and about all its plants and offices, including all places where notices to employees are customarily posted. The notice shall include the following information (except that the information pertaining to National Labor Relations Board shall not be included in notices posted in the plants or offices of carriers subject to the Railway Labor Act, as amended (45 U.S.C. 151-188)).

### Notice to Employees

Under Federal law, employees cannot be required to join a union or maintain membership in a union in order to retain their jobs. Under certain conditions, the law permits a union and an employer to enter into a union-security agreement requiring employees to pay uniform periodic dues and initiation fees. However, employees who are not union members can object to the use of their payments for certain purposes and can only be required to pay their share of union costs relating to collective bargaining, contract administration, and grievance adjustment.

If you do not want to pay that portion of dues or fees used to support activities not related to collective bargaining, contract administration, or grievance adjustment, you are entitled to an appropriate reduction in your payment. If you believe that you have been required to pay dues or fees used in part to support activities not related to collective bargaining, contract administration, or grievance adjustment, you may be entitled to a refund and to an appropriate reduction in future payments.

For further information concerning your rights, you may wish to contact the National Labor Relations Board (NLRB) either at one of its Regional offices or at the following address or toll free number:

National Labor Relations Board
Division of Information

1099 14th Street, N.W.
Washington, DC 20570
1-866-667-6572
1-866-316-6572 (TTY)

To locate the nearest NLRB office, see NLRB's website at *http://www.nlrb.gov*.

(c) The Contractor shall comply with all provisions of Executive Order 13201 of February 17, 2001, and related implementing regulations at 29 CFR part 470, and orders of the Secretary of Labor.

(d) In the event that the Contractor does not comply with any of the requirements set forth in paragraphs (b), (c), or (g), the Secretary may direct that this contract be cancelled, terminated, or suspended in whole or in part, and declare the Contractor ineligible for further Government contracts in accordance with procedures at 29 CFR part 470, Subpart B-Compliance Evaluations, Complaint Investigations and Enforcement Procedures. Such other sanctions or remedies may be imposed as are provided by 29 CFR part 470, which implements Executive Order 13201, or as are otherwise provided by law.

(e) The requirement to post the employee notice in paragraph (b) does not apply to-

(1) Contractors and subcontractors that employ fewer than 15 persons;

(2) Contractor establishments or construction work sites where no union has been formally recognized by the Contractor or certified as the exclusive bargaining representative of the Contractor's employees;

(3) Contractor establishments or construction work sites located in a jurisdiction named in the definition of the United States in which the law of that jurisdiction forbids enforcement of union-security agreements;

(4) Contractor facilities where upon the written request of the Contractor, the Department of Labor Deputy Assistant Secretary for Labor-Management Programs has waived the posting requirements with respect to any of the Contractor's facilities if the Deputy Assistant Secretary finds that the Contractor has demonstrated that-

(i) The facility is in all respects separate and distinct from activities of the Contractor related to the performance of a contract; and

(ii) Such a waiver will not interfere with or impede the effectuation of the Executive order; or

(5) Work outside the United States that does not involve the recruitment or employment of workers within the United States.

(f) The Department of Labor publishes the official employee notice in two variations; one for contractors covered by the Railway Labor Act and a second for all other contractors. The Contractor shall-

(1) Obtain the required employee notice poster from the Division of Interpretations and Standards, Office of Labor-Management Standards, U.S. Department of Labor, 200 Constitution Avenue, NW, Room N-5605, Washington, DC 20210, or from any field office of the Department's Office of Labor-Management Standards or Office of Federal Contract Compliance Programs;

(2) Download a copy of the poster from the Office of Labor-Management Standards website at *http://www.olms.dol.gov*; or

ERVICE RFP

(3) Reproduce and use exact duplicate copies of the Department of Labor's official poster.

g) The Contractor shall include the substance of this clause in every subcontract or purchase order that exceeds the simplified acquisition threshold, entered into in connection with this contract, unless exempted by the Department of Labor Deputy Assistant Secretary for Labor-Management Programs on account of special circumstances in the national interest under authority of 29 CFR 470.3(c). For indefinite quantity subcontracts, the Contractor shall include the substance of this clause if the value of orders in any calendar year of the subcontract is expected to exceed the simplified acquisition threshold. Pursuant to 29 CFR part 470, Subpart B-Compliance Evaluations, Complaint Investigations and Enforcement Procedures, the Secretary of Labor may direct the Contractor to take such action in the enforcement of these regulations, including the imposition of sanctions for noncompliance with respect to any such subcontract or purchase order. If the Contractor becomes involved in litigation with a subcontractor or vendor, or is threatened with such involvement, as a result of such direction, the Contractor may request the United States, through the Secretary of Labor, to enter into such litigation to protect the interests of the United States.

## I.4 FAR 52.222-42  Statement of Equivalent Rates for Federal Hires (MAY 1989)

In compliance with the Service Contract Act of 1965, as amended, and the regulations of the Secretary of Labor (29 CFR Part 4), this clause identifies the classes of service employees expected to be employed under the contract and states the wages and fringe benefits payable to each if they were employed by the contracting agency subject to the provisions of 5 U.S.C. 5341 or 5332.

*This Statement is for Information Only:*
*It Is Not A Wage Determination.*

| Employee Class | Monetary Wage--Fringe Benefits |
|---|---|
| Pilot | $33.22 |

## I.5 FAR 52.244-6  Subcontracts for Commercial Items (DEC 2004)

(a) *Definitions.* As used in this clause-
"Commercial item" has the meaning contained in Federal Acquisition Regulation 2.202-1, Definitions.
"Subcontract" includes a transfer of commercial items between divisions, subsidiaries, or affiliates of the Contractor or subcontractor at any tier.
(b) To the maximum extent practicable, the Contractor shall incorporate, and require its subcontractors at all tiers to incorporate, commercial items or nondevelopmental items as components of items to be supplied under this contract.
(c)(1) The following clauses shall be flowed down to subcontracts for commercial items:
  (i) 52.219-8, Utilization of Small Business Concerns (MAY 2004) (15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $500,000 ($1,000,000 for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.
  (ii) 52.222-26, Equal Opportunity (APR 2002) (E.O. 11246).
  (iii) 52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era and Other Eligible Veterans (DEC 2001) (38 U.S.C. 4212(a)).
  (iv) 52.222-36, Affirmative Action for Workers with Disabilities (June 1998) (29 U.S.C. 793).
  (v) 52.222-39, Notification of Employee Rights Concerning Payment of Union Dues or Fees (DEC 2004) (E.O. 13201). Flow down as required in accordance with paragraph (g) of FAR clause 52.222-39).
  (vi) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (APR 2003) (46 U.S.C. Appx 1241 and 10 U.S.C. 2631) (flow down required in accordance with paragraph (d) of FAR 52.247-64).

(2) While not required, the Contractor may flow down to subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations.

(d) The Contractor shall include the terms of this clause, including this paragraph (d), in subcontracts awarded under this contract.

# I.6  FAR 52.246-20 Warranty of Services (MAY 2001)

(a) *Definition.* "Acceptance," as used in this clause, means the act of an authorized representative of the Government by which the Government assumes for itself, or as an agent of another, ownership of existing and identified supplies, or approves specific services, as partial or complete performance of the contract.

(b) Notwithstanding inspection and acceptance by the Government or any provision concerning the conclusiveness thereof, the Contractor warrants that all services performed under this contract will, at the time of acceptance, be free from defects in workmanship and conform to the requirements of this contract. The Contracting Officer shall give written notice of any defect or nonconformance to the Contractor **within 30 days from the date of acceptance by the Government.** This notice shall state either--

(1) That the Contractor shall correct or reperform any defective or nonconforming services; or

(2) That the Government does not require correction or reperformance.

·(c) If the Contractor is required to correct or reperform, it shall be at no cost to the Government, and any services corrected or reperformed by the Contractor shall be subject to this clause to the same extent as work initially performed. If the Contractor fails or refuses to correct or reperform, the Contracting Officer may, by contract or otherwise, correct or replace with similar services and charge to the Contractor the cost occasioned to the Government thereby, or make an equitable adjustment in the contract price.

(d) If the Government does not require correction or reperformance, the Contracting Officer shall make an equitable adjustment in the contract price.

# I.7  FAR 52.216-18  Ordering (OCT 1995)

(a) Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule. Such orders may be issued from March, through March of the following year for the base period or any option period exercised.

(b) All delivery orders or task orders are subject to the terms and conditions of this contract. In the event of conflict between a delivery order or task order and this contract, the contract shall control.

(c) If mailed, a delivery order or task order is considered "issued" when the Government deposits the order in the mail. Orders may be issued orally, by facsimile, or by electronic commerce methods only if authorized in the Schedule.

# I.8 FAR 52.216-19 Order Limitations (OCT 1995)

(a) *Minimum order.* When the Government requires supplies or services covered by this contract in an amount of less than $500.00, the Government is not obligated to purchase, nor is the Contractor obligated to furnish, those supplies or services under the contract.

(b) *Maximum order.* The Contractor is not obligated to honor--

(1) Any order for a single item in excess of $50,000;

(2) Any order for a combination of items in excess of $100,000; or

(3) A series of orders from the same ordering office within 60 days that together call for quantities exceeding the limitation in subparagraph (b)(1) or (2) of this section.

(c) If this is a requirements contract (*i.e.*, includes the Requirements clause at subsection 52.216-21 of the Federal Acquisition Regulation (FAR)), the Government is not required to order a part of any one requirement from the Contractor if that requirement exceeds the maximum-order limitations in paragraph (b) of this section.

(d) Notwithstanding paragraphs (b) and (c) of this section, the Contractor shall honor any order exceeding the maximum order limitations in paragraph (b), unless that order (or orders) is returned to the ordering office within 7 days after issuance, with written notice stating the Contractor's intent not to ship the item (or items) called for and the reasons. Upon receiving this notice, the Government may acquire the supplies or services from another source.

## I.9 FAR 52.216-22 Indefinite Quantity (OCT 1995)

(a) This is an indefinite-quantity contract for the supplies or services specified, and effective for the period stated, in the Schedule. The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.

(b) Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause. The Contractor shall furnish to the Government, when and if ordered, the supplies or services specified in the Schedule up to and including the quantity designated in the Schedule as the "maximum." The Government shall order at least the quantity of supplies or services designated in the Schedule as the "minimum."

(c) Except for any limitations on quantities in the Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued. The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

(d) Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; *provided*, that the Contractor shall not be required to make any deliveries under this contract after March, 2012.

## I.10 FAR 52.217-8 Option to Extend Services (NOV 1999)

The Government may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall

Case 2:13-cv-02949-JCJ   Document 1   Filed 05/29/13   Page 78 of 97

not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within 30 days.

## I.11  FAR 52.217-9  Option to Extend the Term of the Contract (MAR 2000) Deviation

(a) The Government may extend the term of this contract by written notice to the Contractor by March, of the applicable year; provided that the Government gives the Contractor a preliminary written notice of its intent to extend at least 30 days before the contract expires.  The preliminary notice does not commit the Government to an extension.

(b) If the Government exercises this option, the extended contract shall be considered to include this option clause.

(c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed 5 years and 6 months.

## I.12  52.222-39  NOTIFICATION OF EMPLOYEE RIGHTS CONCERNING PAYMENT OF UNION DUES OR FEES (DEC 2004)

(a) *Definition.* As used in this clause-

"United States" means the 50 States, the District of Columbia, Puerto Rico, the Northern Mariana Islands, American Samoa, Guam, the U.S. Virgin Islands, and Wake Island.

(b) Except as provided in paragraph (e) of this clause, during the term of this contract, the Contractor shall post a notice, in the form of a poster, informing employees of their rights concerning union membership and payment of union dues and fees, in conspicuous places in and about all its plants and offices, including all places where notices to employees are customarily posted. The notice shall include the following information (except that the information pertaining to National Labor Relations Board shall not be included in notices posted in the plants or offices of carriers subject to the Railway Labor Act, as amended (45 U.S.C. 151-188)).

### Notice to Employees

Under Federal law, employees cannot be required to join a union or maintain membership in a union in order to retain their jobs. Under certain conditions, the law permits a union and an employer to enter into a union-security agreement requiring employees to pay uniform periodic dues and initiation fees. However, employees who are not union members can object to the use of their payments for certain purposes and can only be required to pay their share of union costs relating to collective bargaining, contract administration, and grievance adjustment.

If you do not want to pay that portion of dues or fees used to support activities not related to collective bargaining, contract administration, or grievance adjustment, you are entitled to an appropriate reduction in your payment. If you believe that you have been required to pay dues or fees used in part to support activities not related to collective bargaining, contract administration, or grievance adjustment, you may be entitled to a refund and to an appropriate reduction in future payments.

For further information concerning your rights, you may wish to contact the National Labor Relations Board (NLRB) either at one of its Regional offices or at the following address or toll free number:

National Labor Relations Board
Division of Information
1099 14th Street, N.W.

Washington, DC 20570
1-866-667-6572
1-866-316-6572 (TTY)

To locate the nearest NLRB office, see NLRB's website at *http://www.nlrb.gov*.

(c) The Contractor shall comply with all provisions of Executive Order 13201 of February 17, 2001, and related implementing regulations at 29 CFR part 470, and orders of the Secretary of Labor.

(d) In the event that the Contractor does not comply with any of the requirements set forth in paragraphs (b), (c), or (g), the Secretary may direct that this contract be cancelled, terminated, or suspended in whole or in part, and declare the Contractor ineligible for further Government contracts in accordance with procedures at 29 CFR part 470, Subpart B-Compliance Evaluations, Complaint Investigations and Enforcement Procedures. Such other sanctions or remedies may be imposed as are provided by 29 CFR part 470, which implements Executive Order 13201, or as are otherwise provided by law.

(e) The requirement to post the employee notice in paragraph (b) does not apply to-

(1) Contractors and subcontractors that employ fewer than 15 persons;

(2) Contractor establishments or construction work sites where no union has been formally recognized by the Contractor or certified as the exclusive bargaining representative of the Contractor's employees;

(3) Contractor establishments or construction work sites located in a jurisdiction named in the definition of the United States in which the law of that jurisdiction forbids enforcement of union-security agreements;

(4) Contractor facilities where upon the written request of the Contractor, the Department of Labor Deputy Assistant Secretary for Labor-Management Programs has waived the posting requirements with respect to any of the Contractor's facilities if the Deputy Assistant Secretary finds that the Contractor has demonstrated that-

(i) The facility is in all respects separate and distinct from activities of the Contractor related to the performance of a contract; and

(ii) Such a waiver will not interfere with or impede the effectuation of the Executive order; or

(5) Work outside the United States that does not involve the recruitment or employment of workers within the United States.

(f) The Department of Labor publishes the official employee notice in two variations; one for contractors covered by the Railway Labor Act and a second for all other contractors. The Contractor shall-

(1) Obtain the required employee notice poster from the Division of Interpretations and Standards, Office of Labor-Management Standards, U.S. Department of Labor, 200 Constitution Avenue, NW, Room N-5605, Washington, DC 20210, or from any field office of the Department's Office of Labor-Management Standards or Office of Federal Contract Compliance Programs;

(2) Download a copy of the poster from the Office of Labor-Management Standards website at *http://www.olms.dol.gov*; or

(3) Reproduce and use exact duplicate copies of the Department of Labor's official poster.

(g) The Contractor shall include the substance of this clause in every subcontract or purchase order that exceeds the simplified acquisition threshold, entered into in connection with this contract, unless exempted by the Department of Labor Deputy Assistant Secretary for Labor-Management Programs on account of special circumstances in the national interest under authority of 29 CFR 470.3(c). For indefinite quantity subcontracts, the Contractor shall include the substance of this clause if the value of orders in any calendar year of the subcontract is expected to exceed the simplified acquisition threshold. Pursuant to 29 CFR part 470, Subpart B-Compliance Evaluations, Complaint Investigations and Enforcement Procedures, the Secretary of Labor may direct the Contractor to take such action in the enforcement of these regulations, including the imposition of sanctions for noncompliance with respect to any such subcontract or purchase order. If the Contractor becomes involved in litigation with a subcontractor or vendor, or is threatened with such involvement, as a result of such direction, the Contractor may request the United States, through the Secretary of Labor, to enter into such litigation to protect the interests of the United States.

## I.13  FAR 52.232-19   Availability of Funds for the Next Fiscal Year  (APR 1984)

Funds are not presently available for performance under this contract beyond 09/30/2008. The Government's obligation for performance of this contract beyond that date is contingent upon the availability of appropriated funds from which payment for contract purposes can be made. No legal liability on the part of the Government for any payment may arise for performance under this contract beyond 09/30/2007, until funds are made available to the Contracting Officer for performance and until the Contractor receives notice of availability, to be confirmed in writing by the Contracting Officer.

## I.14  FAR 52.222-43  Fair Labor Standards Act and Service Contract Act—Price Adjustment (Multiple Year and Option Contracts).  (MAY 1989)

(a) This clause applies to both contracts subject to area prevailing wage determinations and contracts subject to collective bargaining agreements.

(b) The Contractor warrants that the prices in this contract do not include any allowance for any contingency to cover increased costs for which adjustment is provided under this clause.

(c) The wage determination, issued under the Service Contract Act of 1965, as amended, (41 U.S.C. 351, et seq.), by the Administrator, Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor, current on the anniversary date of a multiple year contract or the beginning of each renewal option period, shall apply to this contract. If no such determination has been made applicable to this contract, then the Federal minimum wage as established by section 6(a)(1) of the Fair Labor Standards Act of 1938, as amended, (29 U.S.C. 206) current on the anniversary date of a multiple year contract or the beginning of each renewal option period, shall apply to this contract.

(d) The contract price or contract unit price labor rates will be adjusted to reflect the Contractor's actual increase or decrease in applicable wages and fringe benefits to the extent that the increase is made to comply with or the decrease is voluntarily made by the Contractor as a result of:

(1) The Department of Labor wage determination applicable on the anniversary date of the multiple year contract, or at the beginning of the renewal option period. For example, the prior year wage determination required a minimum wage rate of $4.00 per hour. The Contractor chose to pay $4.10. The new wage determination increases the minimum rate to $4.50 per hour. Even if the Contractor voluntarily increases the rate to $4.75 per hour, the allowable price adjustment is $.40 per hour;

(2) An increased or decreased wage determination otherwise applied to the contract by operation of law; or

(3) An amendment to the Fair Labor Standards Act of 1938 that is enacted after award of this contract, affects the minimum wage, and becomes applicable to this contract under law.

(e) Any adjustment will be limited to increases or decreases in wages and fringe benefits as described in paragraph (c) of this clause, and the accompanying increases or decreases in social security and unemployment taxes and workers' compensation insurance, but shall not otherwise include any amount for general and administrative costs, overhead, or profit.

(f) The Contractor shall notify the Contracting Officer of any increase claimed under this clause within 30 days after receiving a new wage determination unless this notification period is extended in writing by the Contracting Officer. The Contractor shall promptly notify the Contracting Officer of any decrease under this clause, but nothing in the clause shall preclude the Government from asserting a claim within the period permitted by law. The notice shall contain a statement of the amount claimed and any relevant supporting data, including payroll records, that the Contracting Officer may reasonably require. Upon agreement of the parties, the contract price or contract unit price labor rates shall be modified in writing. The Contractor shall continue performance pending agreement on or determination of any such adjustment and its effective date.

(g) The Contracting Officer or an authorized representative shall have access to and the right to examine any directly pertinent books, documents, papers and records of the Contractor until the expiration of 3 years after final payment under the contract.

(End of clause)

ERVICE RFP

# PART III--LIST OF DOCUMENTS, EXHIBITS, AND OTHER ATTACHMENTS

## SECTION J--LIST OF ATTACHMENTS

| ATTACHMENT NUMBER/DESCRIPTION | NUMBER OF PAGES |
|---|---|
| Attachment I, Wage Determination No. 95-0222 (REV 23) | 4 |
| Attachment II, Experience Questionnaire | 2 |
| Sample and Guidance on submitting a Proper Invoice | 3 |

ATTACHMENT  I

WD 95-0222 (Rev.-23) was first posted on www.wdol.gov on 02/12/2008
Aerial Photographers/Seeding/Spraying
*********************************************************************
REGISTER OF WAGE DETERMINATIONS UNDER  ³       U.S. DEPARTMENT OF LABOR
        THE SERVICE CONTRACT ACT        ³  EMPLOYMENT STANDARDS ADMINISTRATION
By direction of the Secretary of Labor ³        WAGE AND HOUR DIVISION
                                        ³        WASHINGTON, D.C. 20210
                                        ³
                                        ³
William W. Gross    Division of Wage    ³ Wage Determination No: 1995-0222
Director            Determinations      ³        Revision No: 23
                                        ³     Date Of Revision: 02/06/2008
--------------------------------------------------------------------------
Nationwide: Applicable in the continental U.S. Alaska, Puerto Rico, Hawaii and
Virgin Islands.
--------------------------------------------------------------------------


**Fringe Benefits Required Follow the Occupational Listing**


OCCUPATION CODE - TITLE                                 MINIMUM WAGE RATE

| | | |
|---|---|---|
| 31010 | - Airplane Pilot | 23.62 |
| 31011 | - First Officer (Co-Pilot) | 21.51 |
| 31012 | - Aerial Photographer | 11.80 |

EXCEPT SCHEDULED AIRLINE TRANSPORTATION AND LARGE MULTI-ENGINE AIRCRAFT SUCH AS
THE B-727, DC-8, AND THE DC-9.


ALL OCCUPATIONS LISTED ABOVE RECEIVE THE FOLLOWING BENEFITS:

HEALTH & WELFARE: $3.16 per hour or $126.40 per week or $547.73 per month

VACATION: 2 weeks paid vacation after 1 year of service with a contractor or
successor; 3 weeks after 5 years, and 4 weeks after 15 years. Length of service
includes the whole span of continuous service with the present contractor or
successor, wherever employed, and with the predecessor contractors in the
performance of similar work at the same Federal facility. (Reg. 29 CFR 4.173)

HOLIDAYS: A minimum of ten paid holidays per year, New Year's Day, Martin Luther
King Jr's Birthday, Washington's Birthday, Memorial Day, Independence Day, Labor
Day, Columbus Day, Veterans' Day, Thanksgiving Day, and Christmas Day. (A
contractor may substitute for any of the named holidays another day off with pay
in accordance with a plan communicated to the employees involved.) (See 29 CFR
4174)

VACATION (Hawaii): 2 weeks paid vacation after 1 year of service with a
contractor or successor; 3 weeks after 10 years, and 4 weeks after 15 years.
Length of service includes the whole span of continuous service with the present
contractor or successor, wherever employed, and with the predecessor contractors
in the performance of similar work at the same Federal facility. (Reg. 29 CFR
4.173)

HEALTH & WELFARE (Hawaii): $1.37 per hour, or $54.80 per week, or $237.47 per
month hour for all employees on whose behalf the contractor provides health care
benefits pursuant to the Hawaii prepaid Health Care Act. For those employees who
are not receiving health care benefits mandated by the Hawaii prepaid Health
Care Act, the new health and welfare benefit rate will be $3.16 per hour.

HAZARDOUS PAY DIFFERENTIAL: An 8 percent differential is applicable to employees
employed in a position that represents a high degree of hazard when working with
or in close proximity to ordinance, explosives, and incendiary materials. This
includes work such as screening, blending, dying, mixing, and pressing of
sensitive ordance, explosives, and pyrotechnic compositions such as lead azide,
black powder and photoflash powder. All dry-house activities involving
propellants or explosives. Demilitarization, modification, renovation,
demolition, and maintenance operations on sensitive ordnance, explosives and
incendiary materials. All operations involving regrading and cleaning of
artillery ranges.

A 4 percent differential is applicable to employees employed in a position that
represents a low degree of hazard when working with, or in close proximity to
ordance, (or employees possibly adjacent to) explosives and incendiary materials
which involves potential injury such as laceration of hands, face, or arms of
the employee engaged in the operation, irritation of the skin, minor burns and
the like; minimal damage to immediate or adjacent work area or equipment being
used. All operations involving, unloading, storage, and hauling of ordance,
explosive, and incendiary ordnance material other than small arms ammunition.
These differentials are only applicable to work that has been specifically
designated by the agency for ordance, explosives, and incendiary material.
differential pay.

** UNIFORM ALLOWANCE **

If employees are required to wear uniforms in the performance of this contract
(either by the terms of the Government contract, by the employer, by the state
or local law, etc.), the cost of furnishing such uniforms and maintaining (by
laundering or dry cleaning) such uniforms is an expense that may not be borne by
an employee where such cost reduces the hourly rate below that required by the
wage determination. The Department of Labor will accept payment in accordance
with the following standards as compliance:

The contractor or subcontractor is required to furnish all employees with an
adequate number of uniforms without cost or to reimburse employees for the
actual cost of the uniforms. In addition, where uniform cleaning and maintenance
is made the responsibility of the employee, all contractors and subcontractors
subject to this wage determination shall (in the absence of a bona fide
collective bargaining agreement providing for a different amount, or the
furnishing of contrary affirmative proof as to the actual cost), reimburse all
employees for such cleaning and maintenance at a rate of $3.35 per week (or $.67
cents per day). However, in those instances where the uniforms furnished are
made of "wash and wear" materials, may be routinely washed and dried with other
personal garments, and do not require any special treatment such as dry
cleaning, daily washing, or commercial laundering in order to meet the
cleanliness or appearance standards set by the terms of the Government contract,
by the contractor, by law, or by the nature of the work, there is no requirement
that employees be reimbursed for uniform maintenance costs.

The duties of employees under job titles listed are those described in the
"Service Contract Act Directory of Occupations", Fifth Edition, April 2006,
unless otherwise indicated. Copies of the Directory are available on the
Internet. A links to the Directory may be found on the WHD home page at
http://www.dol.gov/esa/whd/ or through the Wage Determinations On-Line (WDOL)
Web site at http://wdol.gov/.

REQUEST FOR AUTHORIZATION OF ADDITIONAL CLASSIFICATION AND WAGE RATE (Standard
Form 1444 (SF 1444))

Conformance Process:

The contracting officer shall require that any class of service employee which
is not listed herein and which is to be employed under the contract (i.e., the
work to be performed is not performed by any classification listed in the wage
determination), be classified by the contractor so as to provide a reasonable
relationship (i.e., appropriate level of skill comparison) between such unlisted
classifications and the classifications listed in the wage determination. Such
conformed classes of employees shall be paid the monetary wages and furnished
the fringe benefits as are determined. Such conforming process shall be
initiated by the contractor prior to the performance of contract work by such
unlisted class(es) of employees. The conformed classification, wage rate, and/or
fringe benefits shall be retroactive to the commencement date of the contract.
(See Section 4.6 (C)(vi)) When multiple wage determinations are included in a
contract, a separate SF 1444 should be prepared for each wage determination to
which a class(es) is to be conformed.

The process for preparing a conformance request is as follows:

1) When preparing the bid, the contractor identifies the need for a conformed
occupation(s) and computes a proposed rate(s).

2) After contract award, the contractor prepares a written report listing in
order proposed classification title(s), a Federal grade equivalency (FGE) for
each proposed classification(s), job description(s), and rationale for proposed
wage rate(s), including information regarding the agreement or disagreement of
the authorized representative of the employees involved, or where there is no
authorized representative, the employees themselves. This report should be
submitted to the contracting officer no later than 30 days after such unlisted
class(es) of employees performs any contract work.

3) The contracting officer reviews the proposed action and promptly submits a
report of the action, together with the agency's recommendations and pertinent
information including the position of the contractor and the employees, to the
Wage and Hour Division, Employment Standards Administration, U.S. Department of
Labor, for review. (See section 4.6(b)(2) of Regulations 29 CFR Part 4).

4) Within 30 days of receipt, the Wage and Hour Division approves, modifies, or
disapproves the action via transmittal to the agency contracting officer, or
notifies the contracting officer that additional time will be required to
process the request.

5) The contracting officer transmits the Wage and Hour decision to the
contractor.

6) The contractor informs the affected employees.

Information required by the Regulations must be submitted on SF 1444 or bond
paper.

When preparing a conformance request, the "Service Contract Act Directory of
Occupations" (the Directory) should be used to compare job definitions to insure
that duties requested are not performed by a classification already listed in
the wage determination. Remember, it is not the job title, but the required
tasks that determine whether a class is included in an established wage
determination. Conformances may not be used to artificially split, combine, or
subdivide classifications listed in the wage determination.

** OCCUPATIONS NOT INCLUDED IN THE SCA DIRECTORY OF OCCUPATIONS **

Aerial Photographer
The aerial photographer must be skilled in reading flight maps, capable of
assisting the pilot to adhere to flight lines, be able to level and operate a
cartographic camera and its auxiliary equipment mounted in the aircraft so that
the photographs that are taken will have the required forward lap and side lap
for use in photogrammetric mapping equipment, and possess a working knowledge of
aerial films and camera filters to insure proper exposure of the films.
First Officer (Co-Pilot)
Is second in command of commercial airplane and its crew while transporting
passengers, mail, or other cargo on scheduled or nonscheduled flights. Assists
or relieves an airline captain in operating the controls of an airplane;
monitoring flight and engine instruments; and maintaining air-to-ground
communications.

□

*ATTACHMENT   III*

## SAMPLE PROPER INVOICE

*My Company Name*
*My Address*
*My email/website*

Invoice No. 001-0035



**INVOICE**

| Customer | |
|---|---|
| Name | USDA |
| Address | |
| City | St Louis          State MO      ZIP |
| Phone | |

| | |
|---|---|
| Date | 4/1/2007 |
| Order No. | AG-1234-D-07-0035 |
| Contract No. | |
| FOB | N/A |

| Contract Line Item | Description | Qty | Unit | Unit Price | TOTAL |
|---|---|---|---|---|---|
| 001 | Janitorial Services, Forest Ranger Station, Mar 1-Mar 31, 2007 | 1.00 | Month | $   600.00 | $        600.00 |
| 003 | Janitorial Services, Forest Campground, Mar 1-Mar 31, 2007 | 1.00 | Month | $   400.00 | $        400.00 |
| | | | | SubTotal | $     1,000.00 |
| | | | | Shipping | $                - |
| | | | | TOTAL | $     1,000.00 |

Tax ID Number (TIN)

**Remit Payment**
Name
Address
Bank Name
Routing No
Account No

Any other information as required by contract

For questions contact: Name, Title, Address, Phone, Email



FAR 32.905(b)(1)

A proper invoice must include the following items (except for interim payments on cost reimbursement contracts for services):

1. Name and address of the contractor.
2. Invoice date and invoice number. (Contractors should date invoices as close as possible to the date of mailing or transmission.)
3. Contract number or other authorization for supplies delivered or services performed (including order number and contract line item number).
4. Description, quantity, unit of measure, unit price, and extended price of supplies delivered or services performed.
5. Shipping and payment terms (*e.g.*, shipment number and date of shipment, discount for prompt payment terms). Bill of lading number and weight of shipment will be shown for shipments on Government bills of lading.
6. Name and address of contractor official to whom payment is to be sent (must be the same as that in the contract or in a proper notice of assignment).
7. Name (where practicable), title, phone number, and mailing address of person to notify in the event of a defective invoice.
8. Taxpayer Identification Number (TIN). The contractor must include its TIN on the invoice only if required by agency procedures. (See FAR 4.9 TIN requirements.)
9. Electronic funds transfer (EFT) banking information.
    a. The contractor must include EFT banking information on the invoice only if required by agency procedures.
    b. If EFT banking information is not required to be on the invoice, in order for the invoice to be a proper invoice, the contractor must have submitted correct EFT banking information in accordance with the applicable solicitation provision (*e.g.*, 52.232-38, Submission of Electronic Funds Transfer Information with Offer), contract clause (*e.g.*, 52.232-33, Payment by Electronic Funds Transfer-Central Contractor Registration, or 52.232-34, Payment by Electronic Funds Transfer-Other Than Central Contractor Registration), or applicable agency procedures.
    c. EFT banking information is not required if the Government waived the requirement to pay by EFT.
10. Any other information or documentation required by the contract (*e.g.*, evidence of shipment).

# EXHIBIT 3



| United States Department of Agriculture | Forest Service | Northeastern Research Station | 11 Campus Blvd., Suite 200 Newtown Square, PA 19073-3200 |
|---|---|---|---|

**File Code:** 6310
**Route To:** *

**Date:** March 28, 2008

**Subject:** Designation of Contracting Officer's Technical Representative

**To:** Rodney Whiteman

Enclosed is your designation as Contracting Officer's Technical Representative for Contract Number AG-3604-C-08-0003. Also enclosed is the first Task Order/Delivery Order issued (AG-3604-D-08-0008) for the period March, 2008 through March, 2009.

You may act in my behalf with the exception of the actions designated on the attached Form 6300-6.

A copy of Forest Service Handbook 6309.11, Contract Administration Handbook is attached. Please familiarize yourself with the entire handbook, including the Safety portion. Please thoroughly review all appropriate Safety items with contractor.

As a reminder, there are some COR courses online at www.fai.gov which may be helpful. If you complete a COR course, including online COR courses, please send Cindy Johnson, Group Leader of Acquisition your certification so she can keep in your COR file.

PATRICIA PIERCE
Contracting Officer

Enclosures

Cc:  Sterling Airways, Inc.
     Melissa Emerson, Morgantown, WV
     file



Printed on Recycled Paper 

FS-6300-6 (10/90)

| USDA – Forest Service | CONTRACT NO. AG-3604-C-08-0002 AG-3604-D-08-0008 | FILE CODE 6320 |
|---|---|---|
| **DESIGNATION OF** **CONTRACTING OFFICER'S REPRESENTATIVE (COR** *(REF. FSM 6309.11 AND FSH 6309.32)* | UNIT Morgantown, WV | |
| TO: Rod Whiteman | PROJECT Aerial Surveying | |
| | CONTRACTOR Sterling Airways, Inc. | |

This is your designation as Contracting Officer's Representative to administer the above contract. Your major duties and responsibilities are contained in the Handbook of Contract Administration. You are delegated full authority under the contract EXCEPT for the following actions which are reserved for the Contracting Officer:

1. Issue a Notice to Proceed to the Contractor.
2. Approve Change Orders and Amendments.
3. Take action to terminate the contract for default or Government convenience.
4. Make contract adjustments under the Differing Site Conditions clause.
5. Grant extensions of contract time.
6. Approve Assignment of Claims.
7. Make final decisions under the Disputes clause.
8. Make final acceptance under the contract.
9. Make final decisions under the Suspension of Work clause.
10. Make equitable adjustments.
11. Authorize change in amount of Payment Retention.
12. Approve subcontractors.
13. Approve payments.
14. Approve use and possession prior to completion.
15. Enforce the warranty provisions.

| CONTRACTING OFFICER'S NAME *(Print or Type)* PATRICIA PIERCE | SIGNATURE | DATE 3/28/2007 |
|---|---|---|

CC: CONTRACTOR, FOREST, TECHNICAL AND DIVISION, CONTRACT FILES.

# EXHIBIT 4



| United States Department of Agriculture | Forest Service | NE/NA | 11 Campus Blvd., Ste 200 Newtown Square, PA 19073 |

File Code: 6320
Date: March 28, 2008

Sterling Airways, Inc.
ATTN: Mr. James Caneen, President
1100 Airport Road
Hornell, NY 14843

Dear Mr. Caneen:

Your proposal dated March 17, 2008, along with amendment 01 in response to Solicitation Number AG-3604-S-08-0003, is accepted and has been made part of this contract. A copy of the contract is attached. The contract number is AG-3604-C-08-0002. As we discussed, this is an Indefinite Delivery Indefinite Quantity (IDIQ) contract and Delivery Orders or Task Orders will be issued.

Also attached is Delivery Order/Task Order Number AG-3604-D-08-0008 for Base Year, March, 2008 through March, 2009. Please annotate AG-3604-D-08-0008 on all invoices. Work can start immediately.

Mr. Rodney (Rod) Whiteman has been designated as the Contracting Officer's Technical Representative (COTR) for this project. A copy of his designation letter is enclosed. Please contact him at (304)-285-1555 with any questions you may have concerning the technical aspects of this contract.

If you have any questions, please call me at (610)557-4248.

Patricia Pierce

PATRICIA PIERCE
Contracting Officer

Enclosures
cc: Rod Whiteman, COR
    Melissa Emerson, Morgantown, WV



*Snider v. Sterling Airways, Inc., et al.*
*Notice of Removal*
*Exhibit "B" – Certification*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH C. SNIDER, individually and as Executrix of the Estate of DANIEL A. SNIDER, and LEE W. SNIDER, a minor, by his mother, ELIZABETH C. SNIDER, )<br><br>Plaintiff, )<br><br>v. )<br><br>STERLING AIRWAYS, INC., )<br><br>Defendant, )<br><br>and )<br><br>CONTINENTAL MOTORS, INC.; TDY INDUSTRIES, INC.; ALLEGHENY TECHNOLOGIES INCORPORATED; TELEDYNE TECHNOLOGIES INCORPORATED; and TECHNIFY MOTORS (USA), INC., )<br><br>Defendants and Third Party Plaintiffs, )<br><br>v. )<br><br>THE UNITED STATES OF AMERICA, LISE LEMELAND JESSUP, as Administratrix of the Estate of PATRICK C. JESSUP, PATRICIA PIERCE, and MEGAN LEWIS-WHITEMAN, as EXECUTRIX OF THE ESTATE OF RODNEY L. WHITEMAN, )<br><br>Third Party Defendants. ) | Case No. _____ |

## CERTIFICATION OF SCOPE OF EMPLOYMENT

I, Peter F. Frost, Director, Torts Branch, Civil Division, United States Department of Justice, acting pursuant to the provisions of 28 U.S.C. § 2679(d)(2), and by virtue of the authority vested in me by 28 C.F.R. § 15.4, certify that I have read the Complaint and Defendants' Complaint Against Additional Third-Party Defendants Patricia Pierce and Megan Lewis-Whiteman, as Executrix of the Estate of Rodney L. Whiteman. On the basis of the information now available to me, I find that Patricia Pierce and Rodney Whiteman were acting within the scope of their employment with the United States Forest Service at the time of the conduct alleged in Defendants' Complaint Against Additional Third-Party Defendants Patricia Pierce and Megan Lewis-Whiteman, as Executrix of the Estate of Rodney L. Whiteman.

Dated:  May **29** , 2013

Peter F. Frost, Director
Torts Branch, Civil Division
United States Department of Justice

2