IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
ELIZABETH C. SNIDER, Individually  :
and as Executrix of the Estate of  : CIVIL ACTION
DANIEL A. SNIDER, and              :
LEE W. SNIDER, a minor, by his     :
mother, ELIZABETH C. SNIDER        : NO.  13-CV-2949
                                   :
            vs.                    :
                                   :
STERLING AIRWAYS, INC., et. al.    :
                                   :
            vs.                    :
                                   :
THE UNITED STATES OF AMERICA       :
```

## MEMORANDUM AND ORDER

JOYNER, J.                                    August 3, 2016

     This civil action has been brought before the Court on
Motion of the Third-Party Defendant, United States of America, to
Dismiss for Lack of Subject Matter Jurisdiction or alternatively,
for Summary Judgment.  For the reasons articulated in the
paragraphs which follow, the Motion to Dismiss shall be granted.

## History of the Case

     This is the remaining lawsuit of three[1] originally assigned
to the undersigned, all of which arose out of the tragic crash of
a Cessna T210L single engine aircraft in the early afternoon of
June 21, 2010 as it neared the William T. Piper Memorial Airport

---

     [1]  Those other matters, Lewis-Whiteman v. Continental Motors, Inc., et.
al., Civ. A. No. 13-CV-2950, and Jessup v. Continental Motors, Inc., et. al.,
Civ. A. No. 12-CV-4439 have since been amicably resolved by the parties.

in Lock Haven, Pennsylvania.  As a result of the accident, which was caused by a total engine failure as the plane was preparing to land, the pilot, Patrick Jessup, and his two passengers, United States Forest Service employees Rodney Whiteman and Daniel Snider were killed.  At the time of the accident, Messrs. Whiteman and Snider were in the process of conducting an aerial deforestation survey on behalf of the Forest Service.  The plane was being operated pursuant to a charter plane and pilot contract between its owner, Defendant Sterling Airways, Inc. of Hornell, New York and the U.S. Forest Service, dated March 28, 2008.  The accident airplane had been manufactured in 1973 and was equipped with a Continental Motors' TSIO-520-H engine that had last been overhauled in 2004.

With varying degrees of specificity, the complaints in the actions filed by the estates of the three individuals killed as a result of the crash allege negligence, gross negligence, recklessness and/or strict liability on the part of the various defendants in, *inter alia*, the manufacture, maintenance and operation of the Cessna, its engine and component parts.  While all of the lawsuits were initially filed in the Court of Common Pleas of Philadelphia County, after removal and remand, the Lewis-Whiteman and Snider matters were eventually re-removed to this Court following the filing of Third-Party Complaints against

Patricia Pierce and Rodney Whiteman[2], the United States Forest Service Contracting Officer and Contracting Officer's Representative on the Aircraft and Pilot Services Contract between the Forest Service and Sterling.  The United States then substituted itself for the individual employees pursuant to 28 U.S.C. §2679(d).  As noted, by the motion which is now before us, the United States moves to dismiss this action for lack of subject matter jurisdiction or, in the alternative for the entry of summary judgment in its favor.

**Standards Governing Rule 12(b)(1) and Rule 56 Motions**

Dismissals of claims for lack of subject matter jurisdiction are contemplated under Fed. R. Civ. P. 12(b)(1).  Of course, the party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court.  Samuel-Bassett v. Kia Motors America, Inc., 357 F.3d 392, 396 (3d Cir. 2004).[3]  A motion pursuant to Rule 12(b)(1) affords the opportunity to challenge the Court's jurisdiction both on the face of the complaint and as a factual

---

[2]   Inasmuch as Rodney Whiteman was killed in the subject accident, his widow and Executrix of his Estate, Megan Lewis-Whiteman was named as the third-party defendant.

[3]   The United States likewise relies upon Fed. R. Civ. P. 12(h)(3) in requesting dismissal for want of subject matter jurisdiction.  That Rule essentially codifies the foregoing legal principle inasmuch as it reads:

If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

matter.  Common Cause of Pennsylvania v. Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009).  If the motion presents a facial attack, it concerns "an alleged pleading deficiency" whereas a factual attack concerns "the actual failure of a plaintiff's claim to comport factually with the jurisdictional prerequisites."  CNA v. United States of America, 535 F.3d 132, 139 (3d Cir. 2008) (quoting U.S. ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007)).  "When a defendant attacks subject matter jurisdiction 'in fact,' as opposed to an attack on the allegations on the face of the complaint, the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case."  Carpet Group International v. Oriental Rug Importers Ass'n., 227 F.3d 62, 69-70 (3d Cir. 2000)(quoting Mortensen v. First Federal Savings & Loan Assoc., 549 F.2d 884, 891 (3d Cir. 1977).  In such a situation, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Id.

Motions for summary judgment, on the other hand, are governed by the provisions of Fed. R. Civ. P. 56.  Subsection (a) of that Rule provides,

> A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no

4

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

Under this rule then, summary judgment is appropriate only if there are no genuine issues of material fact such that the movant is entitled to judgment as a matter of law.  Erdman v. Nationwide Insurance Co., 582 F.3d 500, 502 (3d Cir. 2009).  In considering a motion for summary judgment, the reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  Burton v. Teleflex, Inc., 707 F.3d 417, 425 (3d Cir. 2013).  The initial burden is on the party seeking summary judgment to point to the evidence "which it believes demonstrate the absence of a genuine issue of material fact."  United States v. Donovan, 661 F.2d 174, 185 (3d Cir. 2011)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law.  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986)).  If the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the

nonmoving party's evidence is insufficient to carry that burden." Id, (quoting Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).  "The mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the nonmovant on the issue."  Renchenski v. Williams, 622 F.3d 315, 324 (3d Cir. 2010)(quoting Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009).  Thus, "if there is a chance that a reasonable juror would not accept a moving party's necessary propositions of fact," summary judgment is inappropriate. Id.(quoting El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007)).

## **Discussion**

*A. Independent Contractor Exclusion*

Noting that "[b]ecause the United States has answered, and discovery is complete, this motion has 'moved into the realm of a factual challenge to the court's subject matter jurisdiction,'" the United States first avers that because the entire action is premised upon the alleged negligence of a government contractor and CMI has failed to show any independent negligence of a federal employee, the claims against the U.S. are barred by the independent contractor exclusion to the Federal Tort Claims Act.[4]

Generally speaking as a sovereign, the United States is immune from suit unless it consents to be sued.  White-Squire v.

---

[4] 28 U.S.C. §2671, *et. seq.,* hereafter referred to as the "FTCA."

United States Postal Service, 592 F.3d 453, 456 (3d Cir. 2010).

This consent to be sued "must be unequivocally expressed."  Id.

The Federal Tort Claims Act has long been recognized as a limited

waiver of the sovereign immunity of the United States, making the

Federal Government liable to the same extent as a private party

for certain torts of federal employees acting within the scope of

their employment.   United States v. Orleans, 425 U.S. 807, 813,

96 S. Ct. 1971, 1975, 48 L. Ed. 2d 390 (1976). Indeed, the

Federal Tort Claims Act, reads as follows in pertinent part:

> The United States shall be liable, respecting the provisions
> of this title relating to tort claims, in the same manner
> and to the same extent as a private individual under like
> circumstances, but shall not be liable for interest prior to
> judgment or for punitive damages.
>     ...

28 U.S.C. §2674.  Thus, "[t]he Federal Tort Claims Act vests

exclusive jurisdiction in district courts for claims against the

United States 'caused by the negligent or wrongful act or

omission of any employee of the Government while acting within

the scope of his office or employment under circumstances where

the United States, if a private person, would be liable to the

claimant in accordance with the law of the place where the act

occurred.'" Norman v. United States, 111 F.3d 356, 357 (3d Cir.

1997)(quoting 28 U.S.C. §1346(b)).

    "Title 28 U.S.C. §2671 explains that 'Federal agency' and

'Employee of the government' do not include any contractor with

the United States" and "[t]hus, there is an independent-

contractor exemption in the Federal Tort Claims Act." Id. As a result, the United States is not liable for torts committed by its independent contractors. Orleans, 425 U.S. at 814, 96 S. Ct. at 1976; Theokary v. United States, No. 13-3143, 2014 U.S. App. LEXIS 6072 at *4, 562 Fed. Appx. 116, 118 (3d Cir. March 31, 2014).

However, "the FTCA does *not* immunize the United States from claims against it for injuries caused by the negligence or omission of its own employees if those employees were acting within the scope of their employment." Jackson v. Liberty Mutual Insurance Co., No. 06-4960, 2008 U.S. App. LEXIS 11468 at *2 282 Fed. Appx. 150, 151 (3d Cir. May 29, 2008). "If such acts are alleged, a district court would have subject matter jurisdiction to entertain the claim, with the finding of liability ultimately for the factfinder." Id.(citing 28 U.S.C. §1346(b)(1)).

"The determination of whether a party is an independent contractor or a government employee is at the crux of many FTCA cases and requires a fact-intensive determination." Smiley v. Artisan Builders, Civ. A. No. 13-7411, 2015 U.S. Dist. LEXIS 83800 at *11 (E.D. Pa. June 26, 2015). The Supreme Court has adopted the traditional, common law distinction between employees of the principal and employees of an independent contractor with the principal in construing the "contractor of the United States" language of §2671," and has held that the critical factor in

making this determination is the "authority of the principal to control the detailed physical performance of the contractor." <u>Logue v. United States</u>, 412 U.S. 521, 527-528, 93 S. Ct. 2215, 2219, 37 L. Ed. 2d 121 (1973); <u>Smith v. Steffens</u>, 429 F. Supp. 2d 719, 721 (E.D. Pa. 2006). Indeed, the "question is not whether the contractor receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government." <u>Id</u>.; <u>See also</u>, <u>Orleans</u>, <u>supra</u>. "If a federal actor supervises the day-to-day operations of the contractor's job, the contractor is generally considered an employee of the United States." <u>Nolden v. United States</u>, No. 1:12-cv-1541, 2014 U.S. Dist. LEXIS 52881 at *10 (M.D. Pa. April 16, 2014)(citing <u>Orleans</u>, 425 U.S. at 815). "Conversely, if the contractor manages the job's daily functions, and the federal actor exercises only broad supervisory powers, the contractor is likely an independent contractor even if the Government reserves the right to inspect the contractor's work and monitor its compliance with federal law." <u>Id</u>, at *11.

In applying the foregoing principles, we first observe that the basis for CMI's joinder of the United States is the alleged duty on the part of the Forest Service to "assure that proper maintenance was performed upon the Aircraft at its home base at the Sterling facility in Hornell, New York." (Defendants' Complaint against Additional Third-Party Defendants Patricia

Pierce and Megan Lewis-Whiteman, as Executrix of the Estate of
Rodney L. Whiteman, attached to the United States' Motion to
Dismiss or for Summary Judgment as Exhibit "1" at ¶ 4).
According to the joinder complaint, this purported duty arose out
of the 2008 contract between the U.S. Department of Agriculture,
Forest Service and Sterling Airways which identified Patricia
Pierce as the Contracting Officer with responsibility for, *inter
alia*, giving "written notice of any defects or non-conformance to
the requirements of the Contract." (Exhibit 1, ¶ 19).  Ms.
Pierce, in turn, designated Mr. Whiteman as the "Contracting
Officer's Technical Representative," with responsibility for
"administering the performance of work under the Contract" and
"technical aspects of the Contract."  (Exhibit 1, ¶s 17, 18).  In
follow-up to its averment that "Sterling failed to inspect and
maintain the Aircraft in a reasonably safe condition in accord
with the requirements of Part 135 of the Federal Aviation
Regulations," CMI contends that "Ms. Pierce and Mr. Whiteman,
severally or jointly, along with other presently unknown federal
officers, employees, and agents, were negligent, grossly
negligent, and reckless in that they knew or should have known by
an inspection of the Sterling facility and its records and the
Aircraft ... that Sterling lacked the qualifications and
equipment to properly maintain the Aircraft in reasonably safe
condition and that Sterling was not properly maintaining or

providing for the maintenance of the Aircraft in reasonably safe condition at its home base in Hornell, New York."  (Exhibit 1, ¶s 20-22).

It has been said that "FTCA plaintiffs must meet the criteria of [28 U.S.C.] §1346(b)(1) before a district court may exercise jurisdiction," which criteria mandate that a claim must be made:

> [1] against the United States, [2] for money damages, [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

CNA v. United States, 535 F.3d 132, 141 (3d Cir. 2008)(quoting FDIC v. Meyer, 510 U.S. 471, 477, 114 S. Ct. 996, 1001, 127 L. Ed. 2d 308 (1994)).  Inasmuch as the preceding allegations clearly evince that the gravamen of CMI's joinder complaint is the purported negligence of Ms. Pierce and the late Mr. Whiteman, acting within the course and scope of their employment as Contracting Officer and Contracting Officer's Technical Representative for the U.S. Forest Service, and that the result of that alleged negligence was the crash of the aircraft and the deaths of Messrs. Snider, Jessup and Whiteman, we find that the above "threshold requirements" are satisfied such that this Court properly possesses subject matter jurisdiction.  Equally evident is that the defendant Government is not being charged with

11

liability for the actions and/or inactions of Sterling or any
other independent contractor, but rather for the actions and
inactions of its own employees in fulfilling the contract's
requirements.  For these reasons, we deem the independent
contractor exclusion inapplicable and deny the motion to dismiss
for lack of subject matter jurisdiction on the basis of the
independent contractor exclusion.

B.  *Discretionary Function Exception*

As an alternative ground for dismissal, the United States
asserts that the discretionary function exception to the FTCA
also bars this action.

The so-called "discretionary function exception" is in fact
the first exception denominated under 28 U.S.C. §2680.  It
provides:

> The provisions of this chapter [28 USCS §2671 et. seq.] and
> section 1346(b) of this title [28 USCS §1346(b)] shall not
> apply to -
>
>> (a) Any claim based upon an act or omission of an
>> employee of the Government, exercising due care, in the
>> execution of a statute or regulation, whether or not
>> such statute or regulation be valid, or based upon the
>> exercise or performance or the failure to exercise or
>> perform a discretionary function or duty on the part of
>> a federal agency or an employee of the Government,
>> whether or not the discretion involved be abused.

28 U.S.C. §2680(a).

The Supreme Court has opined that "[t]he §2680 exceptions
are designed to protect certain important governmental functions
and prerogatives from disruption.  They mark the 'boundary

12

between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." Molzof v. United States, 502 U.S. 301, 311, 112 S. Ct. 711, 718, 116 L. Ed.2d 731, 743 (1992). "'Congress has taken steps to protect the Government from liability that would seriously handicap efficient government operations.'" Id.(quoting United States v. Variq Airlines, 467 U.S. 797, 808, 104 S. Ct. 2755, 81 L. Ed. 2d 660 (1984)).

The discretionary function exception "covers only acts that are discretionary in nature, acts that 'involve an element of judgment or choice,' ... and 'it is the nature of the conduct, rather than the status of the actor' that governs whether the exception applies." U.S. v. Gaubert, 499 U.S. 315, 322, 111 S. Ct. 1267, 1273, 113 L. Ed. 2d 335 (1991)(quoting, *inter alia*, Berkovitz v. United States, 486 U.S. 531, 536, 108 S. Ct. 1954, 1958, 100 L. Ed. 2d 531 (1988) and Variq, 467 U.S. at 813, 104 S. Ct. at 2764). "Because the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy." Id, 499 U.S. at 323, 111 S. Ct. at 1273-1274.

"As a threshold matter, before determining whether the discretionary function exception applies, a court must identify the conduct at issue." S.R.P. v. United States, 676 F.3d 329, 332 (3d Cir. 2012)(citing Merando v. United States, 517 F.3d 160, 165 (3d Cir. 2008)).  Once done, the court next must engage in a two-step inquiry to ascertain "whether the discretionary function exception immunizes the government from a suit arising out of such conduct." Id.  "First a court must 'consider whether the action is a matter of choice for the acting [government] employee'" given that "'conduct cannot be discretionary unless it involves an element of judgment or choice.'" Baer v. United States, 722 F.3d 168, 172 (3d Cir. 2013)(quoting Berkovitz, 486 U.S. at 536, 108 S. Ct. 1954).  "Second, a court must determine whether the judgment exercised 'is of the kind that the discretionary function exception was designed to shield.'" Id. It should further be noted that "[a]lthough a plaintiff bears the burden of establishing that his claims fall within the scope of the FTCA's waiver of the federal government's sovereign immunity, the Government has the burden of proving the applicability of the discretionary function exception." S.R.P., 676 F.3d at 333(quoting Merando, 517 F.3d at 164).

In this case, the Government's conduct at issue arose under the Aircraft and Pilot Services Contract between the U.S. Department of Agriculture, United States Forest Service and

14

Sterling Airways.   As alleged in the third-party complaint,
Patricia Pierce, as the Contracting Officer and Rodney Whiteman,
who was appointed by Ms. Pierce as the Technical Representative
for the Contract, were charged with the duty on behalf of the
Forest Service to, *inter alia*, ensure that the contract
requirements that Sterling provide an "appropriate and Forest
Service certified and approved aircraft and pilot" that complied
"with all FAR part 135 requirements" was being fulfilled, "to
approve an inspection system for the services provided under the
contract," and "to have a safety plan in place" before each
flight.  (Joinder Complaint, ¶s 6-9, 17-19).   CMI essentially
alleges that Ms. Pierce and Mr. Whiteman were negligent, grossly
negligent and reckless in that they permitted the accident
aircraft to be operated on the day that it crashed.   We can find
nothing in these allegations which is in any way suggestive of or
involves the permissible exercise of policy judgment or
considerations of social, economic or political policy.
Consequently we cannot find that the alleged negligence is of the
kind that the discretionary function exception was designed to
shield.   See, e.g., Berkovitz, 486 U.S. at 537, 108 S. Ct. at
1959.

Moreover the joinder complaint avers that the United States,
by and through its employees, were "required" to undertake and
had the "responsibility" to, *inter alia*, inspect Sterling's

15

facilities, books, records, etc. to ensure that the airplane complied with the terms and conditions of the contract, to approve an inspection system, to have a safety plan in place, to terminate the contract for default and to enforce the contract's warranty provisions.  This language, on the other hand, strongly evinces that the said employees had no discretion or choice as to whether or not to engage in such activities.[5]  For this reason as well, we conclude that the discretionary function exception has no application here and we therefore deny the motion to dismiss on the basis of 28 U.S.C. §2680(a).

*C.  Worker's Compensation Bar*

The United States next contends that the complaint against it should be dismissed because a similarly situated private person could not be liable under state law, insofar as the Plaintiff has received worker's compensation benefits pursuant to the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. §8101, *et. seq.*  The gist of this argument appears to be that because in most states the payment of worker's compensation benefits is an exclusive remedy for an employee who is injured or killed while working, and since Plaintiff's estate received FECA benefits, the United States cannot be held liable for contribution and/or

---

[5]   While Ms. Pierce and/or Mr. Whiteman may have had some discretion in *how* to best fulfill these requirements, this does not equate to possessing discretion or having a choice in *whether* to undertake the actions necessary to satisfy the contract's mandates.

indemnity on the joinder complaint.  Thus, according to the
Government, this Court lacks jurisdiction and the claims against
it are properly dismissed.

The FECA is a workers' compensation statute for federal
employees.  Pourier v. United States, 138 F.3d 1267 (8th Cir.
1998).  "Like most workers' compensation statutes, FECA
guarantees injured federal employees the right to receive
immediate, fixed benefits, regardless of fault and without need
for litigation from their employer, i.e. the federal government,
in exchange for statutory immunity from personal injury claims."
In re McAllister Towing, 432 F.3d 216, 218 (3d Cir. 2005).  To
this end, 5 U.S.C. §8116©, further provides:

> The liability of the United States or an instrumentality
> thereof under this subchapter [5 U.S.C. §8101, et. seq.] or
> any extension thereof with respect to the injury or death of
> an employee is exclusive and instead of all other liability
> of the United States or the instrumentality to the employee,
> his legal representative, spouse, dependents, next of kin,
> and any other person otherwise entitled to recover damages
> from the United States or the instrumentality because of the
> injury or death in a direct judicial proceeding, in a civil
> action, or in admiralty, or by an administrative or judicial
> proceeding under a workmen's compensation statute or under a
> Federal tort liability statute.  However, this subsection
> does not apply to a master or a member of a crew of a
> vessel.

Indeed, because the FECA provides an "exclusive" remedy, it
deprives the federal courts of subject-matter jurisdiction to
adjudicate claims brought under the FTCA for work-place injuries
that are covered by FECA.  Mathirampuzha v. Potter, 548 F.3d 70,
81 (2nd Cir. 2008).

The exclusivity provision of FECA, however, "does not directly bar a third-party indemnity action against the United States." Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 199, 103 S. Ct. 1033, 1039, 74 L. Ed. 2d 911 (1983); Weyerhaeuser S.S. Co. v. United States, 372 U.S. 597, 83 S. Ct. 926, 10 L. Ed. 2d 1 (1963).  Rather, courts must look to the underlying cause of action and determine whether a claim for indemnity is viable based on the state of the law, which can include general legal principles as well as a particular statutory scheme.  McAllister, 432 F.3d at 222 (citing Eagle-Picher Indus., Inc. v. United States, 846 F.2d 888, 892 n.6 (3d Cir. 1988)).  "Thus, the right to contribution or indemnity either does or does not exist as a matter of law, separate and apart from the exclusivity provision."  Id.

As noted previously, jurisdiction in this matter[6] arises under 28 U.S.C. §1346(b)(1):

> Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of

---

[6]  We note that diversity jurisdiction also exists in this matter inasmuch as Plaintiffs are citizens of West Virginia, Defendant Sterling is a citizen of New York, Defendant CMI is a citizen of Delaware and Alabama, Defendant TDY is a citizen of California and Pennsylvania, Defendant Allegheny is a citizen of Delaware and Pennsylvania, Defendant TTI is a citizen of Delaware and California and Defendant Technify is a citizen of Alabama.  See, 28 U.S.C. §§1332(a)(1), (c)(1).

any employee of the Government while acting within the scope
of his office or employment, under circumstances where the
United States, if a private person, would be liable to the
claimant in accordance with the law of the place where the
act or omission occurred.

Turning to CMI's joinder complaint against Pierce and
Whiteman, we find that the gist of CMI's allegations against them
and the grounds for their joinder is their purported failure to
assure that Sterling was properly repairing and maintaining  the
accident aircraft at its home base in Hornell, New York.
(Joinder Complaint, ¶s 4, 22-26, 28).   We therefore look to New
York law as that is the place where the alleged negligent act or
omission occurred.   In doing so, the Supreme Court has decreed
that the whole law (including the choice of law rules) of the
place where the negligence occurred is to be applied, as opposed
to the internal law of the place where the negligence occurred or
the internal law of the place where the operative effect of the
negligence took place.   Richards v. United States, 369 U.S. 1, 2,
11, 82 S. Ct. 585, 587, 592, 7 L. Ed. 2d 492, 494, 499 (1962);
Simon v. U.S., 341 F.3d 193, 200 (3d Cir. 2003).   As a
consequence, we are compelled to also look to New York conflicts
law for guidance.

New York was at the forefront of a revolution in the manner
in which courts throughout the United States approached choice of
law questions.   In the landmark case of Babcock v. Jackson, 12
N.Y.2d 473, 191 N.E.2d 279, 240 N.Y.S. 2d 743 (1963), the New

York Court of Appeals discarded the "traditional choice of law rule, embodied in the original Restatement of Conflict of Laws (§384) ... that the substantive rights and liabilities arising out of a tortious occurrence are determinable by the law of the place of the tort." Babcock, 12 N.Y.2d at 477, 191 N.E.2d at 281, 240 N.Y.S. 2d at 746.  In its place, the Court formally adopted a "center of gravity" or "grouping of contacts" doctrine which operated to give "controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." Babcock, 12 N.Y.2d at 481, 191 N.E.2d at 283, 240 N.Y.S. at 749.

"Over time, the 'grouping of contacts' approach put into place by Babcock evolved into a more explicit 'interest analysis.'" Edwards v. Erie Coach Lines Co., 17 N.Y. 3d 306, 320, 952 N.E.2d 1033, 1036, 929 N.Y.S.2d 41, 44 (2011)(citing Miller v. Miller, 22 N.Y.2d 12, 17, 237 N.E.2d 877, 290 N.Y.S.2d 734 (1968)).  Further, "a distinction was drawn between laws that regulate primary conduct (such as standards of care) and those that allocate losses after the tort occurs (such as guest statutes or vicarious liability rules)." Simon v. Philip Morris, 124 F. Supp. 2d 46, 57 (E.D. N.Y. 2000)(citing Cooney v. Osgood Machinery, Inc., 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993)).  Generally speaking, loss-allocation rules

"prohibit, assign, or limit liability *after the tort occurs,*" whereas conduct-regulating rules "have the prophylactic effect of governing conduct to prevent injuries from occurring" in the first place.  <u>Edwards</u>, 17 N.Y.3d at 318, n.1, 952 N.E.2d at 1034, n.1, 929 N.Y.S.2d at 42, n.1.

It should be noted that "[l]oss-allocation and conduct-regulation are not rigid categories, though the distinction between them serves as a proxy for the ultimate question of which state has the greater interest in having its law applied to the litigation at hand."  <u>Hamilton v. Accu-Tek</u>, 47 F. Supp. 2d 330, 337 (E.D.N.Y. 1999).  "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort 'occurred' will generally apply because that jurisdiction usually has the greatest interest in regulating behavior within its borders."  <u>Simon</u>, <u>supra</u>.  "If competing 'post event remedial rules' are at stake, other factors are considered."  <u>Id</u>.(citing, *inter alia*, <u>Schultz v. Boy Scouts</u>, 65 N.Y.2d 189, 195, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985) and <u>Hamilton</u>, 47 F. Supp. 2d at 336-337). Under New York's choice of law rules, the interest of the locus jurisdiction in having its loss-allocation rule applied is deemed to be minimal.  <u>Hamilton</u>, 47 F. Supp. 2d at 336 (citing <u>Schultz</u>, 65 N.Y.2d at 198, 480 N.E.2d at 685, 491 N.Y.S.2d at 96).  And where the conflict is between loss-allocating rules, the locus jurisdiction has a lesser interest and the interest of the

parties' domiciles assumes correspondingly greater importance, although other factors may be taken into consideration as well. Hamilton, at 337.  In the opinion of the New York Court of Appeals, the correct way to conduct a choice-of-law analysis is to consider each plaintiff vis-a-vis each defendant while applying the three general rules which were first articulated in Neumeier v. Kuehner, 31 N.Y.2d 121, 127, 286 N.E.2d 454, 335 N.Y.S.2d 64 (1972), a case involving application of a "guest statute" but which have since been adopted and routinely applied to conflicts in loss-allocation situations not involving guest statutes.  Edwards, 17 N.Y.3d at 322, 329, 952 N.E.2d at 1037, 1042, 929 N.Y.S.2d at 45, 50.  Contribution rules are loss allocating, not conduct regulating and so the Neumeier rules are properly applied here.  Cooney, 81 N.Y.2d at 74, 612 N.E.2d at 282, 595 N.Y.S.2d at 924; Gleason v. Holman Contract Warehouse, 250 A.D.2d 339, 341, 681 N.Y.S.2d 664, 666 (App. Div. 3d 1998).

The first Neumeier rule provides that when the plaintiff and the defendant are domiciled in the same state, the law of that state shall govern.  Edwards, 17 N.Y.3d at 321, 952 N.E.2d at 1037; Cooney, 81 N.Y.2d at 73, 612 N.E.2d at 281(both citing Neumeier, 31 N.Y.2d at 128).  The second rule has been said to address "'true'" conflicts, where the parties are domiciled in different states and the local law favors the respective domiciliary."  Cooney, id.  In that case, when the defendant's

22

conduct occurred in the state of [defendant's] domicile and that state would not impose liability, the defendant should not be exposed to liability under the law of the victim's domicile.  Id. If, on the other hand, the plaintiff is injured or harmed in the place of [plaintiff's] domicile and would be entitled to recover, the out-of-state defendant should generally be unable to interpose the law of his or her domicile to defeat recovery. Id, (citing Neumeier, 31 N.Y.2d at 128).  In essence, then, the second Neumeier rule adopts a "place of injury" test.  Id.

Under the third rule, which applies when the plaintiff and defendant are domiciled in different jurisdictions, "the usually governing law will be that of the place where the accident occurred, unless 'displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants.'  This rule too, generally uses the place of injury, or locus, as the determining factor." Cooney, 81 N.Y.2d at 73-74.  Consequently, the domiciles of the various parties is of paramount importance.  In New York, the domicile of a corporation for choice-of-law purposes is the state where it maintains its principal place of business.  Elson v. Defren, 283 A.D.2d 109, 116, 726 N.Y.S.2d 407, 413 (App. Div. 1st 2001); Dorsey v. Yantambwe, 276 A.D.2d 108, 111, 715 N.Y.S.2d 566 (App. Div. 4th 2000).

In this case, it appears that Defendants/Third Party Plaintiffs CMI and Technify Motors are domiciliaries of Alabama, having principal places of business in Mobile; Teledyne Technologies is domiciled in California (Thousand Oaks); and Allegheny Technologies, Inc. and TDY Industries with principal places of business in Pittsburgh are Pennsylvania domiciliaries. While it appears that New York law may consider the United States to be domiciled in the District of Columbia, the sole decision holding to that effect is quite old and predates modern New York choice of law rules. Gould Electronics, Inc. v. U.S., 220 F.3d 169, 185 (3d Cir. 2000)(citing Fisher v. Fisher, 250 N.Y. 313, 165 N.E. 460, 462 (1918)). As noted by the Third Circuit in Gould, there are three possibilities for the domicile of the United States for purposes of New York choice of law: (1) the U.S. is domiciled in all 50 states; (2) the U.S. is domiciled nowhere; and (3) as noted above, the U.S. is domiciled in the District of Columbia. Gould, at 184-186. It thus appears clear that in this case, unless we definitively find that the United States is domiciled in all 50 states, we are concerned with application of the third Neumeier rule.[7]

---

[7]   And, even if we were to find that the U.S. is domiciled in all states and that it therefore shared a domicile with the third party plaintiffs, under the law of Alabama, California and Pennsylvania, unless the parties have entered into an express indemnity agreement providing therefor, a third-party contribution or indemnity claim will not lie against an employer who has paid worker's compensation benefits to an injured employee. See, Goodyear Tire & Rubber Co. v. J.M. Tull Metals Co., 629 So. 2d 633 (Ala. 1993); Shumosky v. Lutheran Welfare Services of Northeastern Pennsylvania, 754 A.2d 196 (Pa. Super. 2001); 77 P.S. §481; E.B. Wills Co. v. Superior Court, 56

If the United States is domiciled nowhere or in the District of Columbia, then under the third rule, the law of Pennsylvania, as the state in which the accident occurred will govern unless "displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants."  Third party plaintiffs do not argue that displacing the law of Pennsylvania is appropriate here and, as the U.S. points out, there is nothing on the record before us to show that New York has any real interest in applying its workers' compensation statute (NY CLS Work Comp §11) to a situation like this one where workers' compensation benefits were paid to the family of a deceased West Virginia-domiciled employee who was fatally injured in an accident that occurred in Pennsylvania to permit the recovery of contribution/indemnity by manufacturers domiciled in Alabama, California, Pennsylvania and Delaware.[8]

---

Cal.App.3d 650, 128 Cal. Rptr. 541 (1976). Moreover, as pointed out by the Third Circuit in Gould, the idea that the United States is domiciled in all 50 states runs counter to New York's rule that a person may have only one state of domicile and therefore under New York choice of law, it is unlikely that the United States would be considered domiciled in all 50 states. Gould, 220 F.3d at 185 (citing In re Strobel's Estate, 200 Misc. 483, 109 N.Y.S.2d 848, 850 (N.Y. Sur. Ct. 1951); 49 N.Y. Jur.2d, Domicile & Residence §1 (1985)). It is of course, also conceivable that if Sterling had likewise asserted a contribution and/or indemnity claim against the Ms. Pierce, Mr. Whiteman and/or the United States that we would potentially be concerned with the second Neumeier rule given that Sterling is a domiciliary of New York.

[8]  Specifically, NY CLS Work Comp §11 provides the following with respect to contribution and indemnity claims against an employer:

An employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer

25

And, since Pennsylvania law irrefutably holds that third-party
claims for contribution or indemnity from an employer or its
insurance carrier that has paid workers' compensation benefits to
an injured employee are barred in the absence of an express
written agreement to the contrary[9], we are constrained to agree
that we lack subject matter jurisdiction in this matter under the
FTCA.  See, also, Schlosser v. Lyras, Civ. A. No. 04-140J, 2006
U.S. Dist. LEXIS 64125, *43, *44 (W.D. Pa. Sept. 7, 2006)("Under
the law of Pennsylvania, the contribution and indemnity actions

_____

unless such third person proves through competent medical evidence that
such employee has sustained a "grave injury" which shall mean only one
or more of the following: death, permanent and total loss of use or
amputation of an arm, leg, hand or foot, loss of multiple fingers, loss
of multiple toes, paraplegia or quadriplegia, total and permanent
blindness, total and permanent deafness, loss of nose, loss of ear,
permanent and severe facial disfigurement, loss of an index finger or an
acquired injury to the brain caused by an external physical force
resulting in permanent total disability.


[9]   77 P.S. §481 reads as follows:

**§481. Exclusiveness of remedy; actions by and against third party;
contract indemnifying third party**

**(a)** The liability of an employer under this act shall be exclusive and
in place of any and all other liability to such employes, his legal
representative, husband or wife, parents, dependents, next of kin or
anyone otherwise entitled to damages in any action at law or otherwise
on account of any injury or death as defined in section 301(c)(1) and
(2) or occupational disease as defined in section 108.

**(b)** In the event injury or death to an employe is caused by a third
party, then such employe, his legal representative, husband or wife,
parents, dependents, next of kin and anyone otherwise entitled to
receive damages by reason thereof, may bring their action at law against
such third party, but the employer, his insurance carrier, their
servants and agents, employes, representatives acting on their behalf or
at their request shall not be liable to a third party for damages,
contribution, or indemnity in any action at law, or otherwise, unless
liability for such damages, contributions or indemnity shall be
expressly provided for in a written contract entered into by the party
alleged to be liable prior to the date of the occurrence which gave rise
to the action.

26

pending against the United States are barred by Pennsylvania

Worker's Compensation Act, 77 Pa. C. S. §481(b) [and] [t]he

United States, 'if a private person, would not be liable' under

Pennsylvania law to the parties currently seeking to advance

their contribution and indemnity claims.") Accordingly, the

United States' motion to dismiss the claims against it shall be

granted[10].

     An order follows.

---

    [10]   In light of our determination that the motion to dismiss the Third-Party Plaintiffs' claims against the United States is properly granted on the basis of the workers' compensation bar, we need not and do not reach the merits of the motion for summary judgment.